Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
310.474.9111 (*telephone*)
310.474.8585 (*facsimile*)

Cornelius P. Dukelow*
Oklahoma Bar No. 19086
**ABINGTON COLE + ELLERY**
320 South Boston Avenue
Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (*telephone & facsimile*)
cdukelow@abingtonlaw.com

\**Pro Hac Vice* application to be submitted

*Counsel to Plaintiff and the Proposed Classes*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| SHADI HAYDEN, individually and on behalf of all others similarly situated, | Case No. 8:20-cv-01203 |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | |
| THE RETAIL EQUATION, INC., and SEPHORA USA, INC., | |
| Defendants. | DEMAND FOR JURY TRIAL |

Plaintiff, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of counsel, and on information and belief as follows:

## BRIEF SUMMARY OF THE CASE

1.     This case involves the unlawful sharing, receipt, and use of consumer data – specifically, non-anonymized, individual Consumer Commercial Activity Data and Consumer ID Data (as defined below).

2.     Without the consent or knowledge of its consumers, Defendant Sephora USA, Inc. ("Sephora") shares with Defendant The Retail Equation, Inc. ("TRE") data collected from Sephora's consumers. TRE processes the shared consumer data to generate a consumer report and a "risk score" for each of Sephora's consumers. The "risk score" is then used as a pretext to advise Sephora that attempted product returns and exchanges are fraudulent and abusive. Plaintiff and Class members, defined below, are harmed by a) the sharing of their Consumer Commercial Activity Data and Consumer ID Data by Sephora, b) the receipt of their Consumer Commercial Activity Data and Consumer ID Data by TRE, and c) the use of their Consumer Commercial Activity Data and Consumer ID Data by both Defendants. Furthermore, as a result of the practices described herein, Sephora denies valid returns and exchanges.

3.     This is a class action against Defendant Sephora USA, Inc. and Defendant The Retail Equation, Inc. for invasion of privacy, violations of California's unfair competition law, unconscionability, defamation per se, violations of the Fair Credit Reporting Act, and unjust enrichment.

## PARTIES

4.     Plaintiff Shadi Hayden is an individual residing in Campbell, California.

5.     Defendant Sephora USA, Inc. is a Michigan corporation with its principal place of business and headquarters in San Francisco, California.

6.     Defendant The Retail Equation, Inc. is a Delaware corporation with its principal place of business and headquarters in Irvine, California.

**JURISDICTION AND VENUE**

7.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings a claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e, *et seq*.

8.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000 (exclusive of interests and costs), because in the aggregate the proposed nationwide Class is believed to number at least in the thousands, and because at least one member of the Class is a citizen of a State different from Defendants.

9.    This Court has personal jurisdiction over Defendants because they are authorized to do business and regularly conduct business in California. Defendant The Retail Equation, Inc. has its headquarters and principal place of business in California, is authorized to do business in California, and regularly conducts business in California. Defendant Sephora USA, Inc. has its headquarters and principal place of business in California, is authorized to do business in California, and regularly conducts business in California.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the headquarters and principal place of business of Defendant The Retail Equation, Inc. is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District. Defendant Sephora USA, Inc. also maintains retail locations in this District and regularly conducts business in this District.

**STATEMENT OF FACTS**

**Defendants**

11.    Defendant Sephora USA, Inc. ("Sephora") describes itself as "a leader in global prestige retail." Sephora operates approximately 2,300 stores in 33 countries worldwide, and approximately 400 stores in the United States.

12.    Defendant The Retail Equation, Inc. ("TRE"), also operating under the moniker Appriss Retail, describes itself as "the industry leader in retail transaction

optimization solutions at the point of sale and point of return."[1] TRE's technology "uses statistical modeling and analytics to detect fraudulent and abusive behavior when returns are processed at retailers' return counters."[2] TRE's parent company, Appriss, Inc., "provides artificial intelligence-based solutions to help retailers protect margin, unlock sales, and cut shrink."[3] Appriss "optimizes retailers' revenue and margin by shaping behavior in every consumer transaction. The company's solutions use predictive analytics to turn each individual shopper's purchase or return into a more profitable experience."[4] Appriss claims that its "solutions create sizable new sales at the return counter, while also building customer loyalty, and prevent fraudulent and abusive returns, reducing return rates, and improving shrink."[5] Appriss further declares that it "yields immediate financial payback, increasing store comps by as much as 2 percent, with significant return on investment."[6]

13.    Discussing Appriss' acquisition of TRE in 2015, Appriss CEO Mike Davis said: "We are excited to partner with The Retail Equation as we strengthen our strategy to combat organized crime and fraud in all industries."[7] Deven Parekh, chairman of the board for Appriss, further stated: "We believe that Appriss and The Retail Equation have unique capabilities that, together, provide a powerful improvement to the shopping experience by identifying and curbing employee dishonesty, consumer fraud and

---

[1] https://www.theretailequation.com/frequently-asked-questions/ (last visited July 2, 2020).

[2] *Id.*

[3] https://apprissretail.com/about/overview/ (last visited July 2, 2020).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Appriss Acquires The Retail Equation To Strengthen Efforts In Fighting Fraud And Mitigating Risk*, RETAIL SUPPLY CHAIN INSIGHTS (Aug. 19, 2015), https://www.retailsupplychaininsights.com/doc/appriss-acquires-retail-equation-strengthen-fighting-fraud-mitigating-risk-0001 (last visited July 2, 2020).

organized crime within retail."[8] Commenting on Appriss' acquisition and merger of Sysrepublic with TRE in 2016, TRE President Mark Hammond echoed Mr. Parekh's sentiment: "We believe that Appriss, The Retail Equation, and Sysrepublic all bring unique capabilities that, together, provide a powerful improvement to the shopping experience by identifying and curbing employee dishonesty, consumer fraud, and organized crime within retail."[9]

## Defendants' Data Collection, Sharing and Use

14.     Without the knowledge or consent of consumers, Sephora continuously collects large amounts of data about its consumers and shares the collected data with TRE. Although present elsewhere, Sephora's data collection efforts are most prevalent at the point of sale and point of return & exchange. Consumer data collected by Sephora and shared with TRE falls broadly within two categories: "Consumer Commercial Activity Data" and "Consumer ID Data".

15.     As used herein, "Consumer Commercial Activity Data" collected by Sephora and shared with TRE includes the unique purchase, return, and/or exchange histories of individual consumers, *i.e.,* what a consumer buys, when a consumer buys, where a consumer buys, how much a consumer buys, how often a consumer buys, what form of payment a consumer uses, etc. The same, or similar, data is also collected for returns and exchanges.

16.     As used herein, "Consumer ID Data" collected by Sephora and shared with TRE includes the unique identification information contained on or within a consumer's driver's license, government-issued ID card, and/or passport. Unique identification information contained on or within a consumer's driver's license, government-issued ID

---

[8] *Id.*

[9] *Appriss Acquires Sysrepublic; Further Enhances Efforts To Fight Retail Fraud, Protect Profits and Mitigate Risk*, LOSS PREVENTION INSIGHTS (Apr. 13, 2016), https://www.losspreventioninsights.com/doc/appriss-acquires-sysrepublic-further-fight-mitigate-risk-0001 (last visited July 2, 2020).

card, and/or passport includes, but is not necessarily limited to, the consumer's name, date of birth, race, sex, photograph, complete street address, and zip code.

17.     The Consumer Commercial Activity Data and Consumer ID Data collected by Sephora and shared with TRE are non-anonymized and individual data sets, as opposed to anonymized and collective data sets. The Consumer Commercial Activity Data and Consumer ID Data collected by Sephora and shared with TRE have not been sanitized and personally identifiable information has not been removed.

18.     Without the consent or knowledge of Sephora's consumers, TRE processes the shared Consumer Commercial Activity Data and Consumer ID Data with its "statistical modeling and analytics" to create a consumer report and generate a "risk score" for each of Sephora's consumers. The inequity and harm resulting from using data found on a consumer's ID – name, date of birth, race, sex, photograph, street address, zip code, etc. – to generate a consumer's "risk score" cannot be overstated.

**Attempted Return or Exchange Process**

19.     Every time a consumer purchases goods from Sephora, included in the bargain is the ability to return or exchange the purchased goods within a specified period of time.

20.     When a Sephora consumer attempts to make a return or exchange, Sephora swipes or scans the consumer's driver's license, government-issued ID card, or passport and/or scans the original sales transaction receipt (if present), thereby identifying the consumer and the consumer's unique purchase, return, and exchange behavior. New Consumer Commercial Activity Data and Consumer ID Data are also generated at this time.

21.     Without the consent or knowledge of the consumer, Sephora transmits to and shares with TRE the Consumer Commercial Activity Data and Consumer ID Data it collects from the consumer when the consumer attempts to make a return or exchange. This process personally identifies the consumer attempting to make the return or exchange and the identified consumer's "risk score" is generated and accessed.

22.    If a consumer's "risk score" does not meet the score requirement for that consumer, TRE <u>automatically</u> identifies the attempted return or exchange as fraudulent and abusive. Then, using the consumer's "risk score" as a pretext, TRE notifies Sephora that the attempted returns is "fraudulent and abusive" and should therefore be denied.

23.    Sephora informs the consumer that the attempted return or exchange is denied and refuses to process the return or exchange – even when the return or exchange is valid.

24.    Based upon TRE's data analytics and TRE's statement to Sephora that certain attempted returns and exchanges are fraudulent and abusive and should be denied, Sephora denies valid returns and exchanges.

**<u>Plaintiff Hayden</u>**

25.    Plaintiff Hayden purchased cosmetics from Sephora on July 7, 2019.

26.    Plaintiff Hayden attempted to return or exchange a portion of the cosmetics on July 9, 2019.

27.    Plaintiff Hayden presented the receipt for the original purchase at the time of the attempted return or exchange.

28.    Sephora's sales associate entered Plaintiff Hayden's transaction information into Sephora's computer system.

29.    Sephora transmitted Plaintiff Hayden's transaction information to TRE.

30.    Sephora's sales associate did not notify Plaintiff Hayden that her transaction information was being transmitted to TRE.

31.    Plaintiff Hayden did not know her transaction information was being transmitted to TRE.

32.    Sephora's sales associate did not notify Plaintiff Hayden that her transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

33.     Plaintiff Hayden did not know that her transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

34.     After Sephora entered Plaintiff Hayden's transaction information into its computer system, and transmitted that information to TRE, TRE communicated to Sephora's sales associate that the attempted return or exchange was to be declined.

35.     After entering Plaintiff Hayden's transaction information into Sephora's computer system and receiving the communication from TRE, Sephora's sales associate stated to Plaintiff Hayden that the return or exchange was declined based upon the recommendation of TRE.

36.     Sephora's sales associate then presented Plaintiff Hayden a printout stating the return or exchange was declined and providing contact information for TRE.

37.     Sephora's sales associate stated there was nothing further that could be done by the associate or any other Sephora employee and that Plaintiff Hayden's only recourse was to contact TRE.

38.     Plaintiff Hayden was thereby prevented from completing the return or exchange.

## **CLASS ALLEGATIONS**

39.     Plaintiff brings this class action lawsuit individually and on behalf of the proposed Class members under Rule 23 of the Federal Rules of Civil Procedure.

40.     Plaintiff seeks certification of the following Classes:

National Class: **All persons in the United States who had their data transmitted by Sephora to The Retail Equation.**

and,

National Defamation Sub-Class: **All persons in the United States who had a return or exchange denied by Sephora based on communications from The Retail Equation.**

41.     Specifically excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

42.     **Numerosity:** Plaintiff does not know the exact number of Class members, but believes the Classes comprises thousands of consumers throughout the United States. As such, Class members are so numerous that joinder of all members is impracticable.

43.     **Commonality:** Common questions of law and fact exist and predominate over any questions affecting only individual Class members. The common questions include:

a.     Whether Defendants engaged in the conduct alleged herein;

b.     Whether Sephora's conduct constituted Deceptive Trade Practices (as defined below) actionable under the applicable consumer protection laws;

c.     Whether TRE defamed Plaintiff and Class members by advising Sephora that attempted returns and exchanges were fraudulent and should, therefore, be denied;

d.     Whether Defendants' policies and procedures purposefully target consumers of specific socioeconomic backgrounds;

e.     Whether Defendants' policies and procedures negligently affect consumers of specific socioeconomic backgrounds;

f.     Whether Defendants violated the FCRA;

g.     Whether Plaintiff and Class members are entitled to recover actual damages and/or statutory damages; and

h.     Whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

44.   **Typicality:** Plaintiff's claims are typical of the claims of the Classes. Plaintiff and Class members were injured through Defendants' uniform misconduct and their legal claims arise from the same core practices of Defendants.

45.   **Adequacy:** Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel that has considerable experience and success in prosecuting complex class action and consumer-protection cases.

46.   **Risks:** The proposed action meets the requirements of Fed. R. Civ. P. 23(b)(1) because prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Defendants. Sephora collects and shares, and TRE maintains and uses Consumer Commercial Activity Data and Consumer ID Data of the Class members and other individuals, and varying adjudications could establish incompatible standards with respect to: whether Defendants' ongoing conduct violates Class members' rights as alleged herein; and whether the injuries suffered by Class members are legally cognizable, among others. Prosecution of separate actions by individual Class members would also create a risk of individual adjudications that would be dispositive of the interests of other Class members not parties to the individual adjudications, or substantially impair or impede the ability of Class members to protect their interests.

47.   **Injunctive Relief:** The proposed action meets the requirements of Fed. R. Civ. P.  23(b)(2) because Defendants have acted or have refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

48.   **Predominance:** The proposed action meets the requirements of Fed. R. Civ. P.  23(b)(3) because questions of law and fact common to the Classes predominate over any questions that may affect only individual Class members in the proposed class.

49.   **Superiority:** The proposed action also meets the requirements of Fed. R. Civ. P.  23(b)(3) because a class action is superior to all other available methods of fairly

and efficiently adjudicating this dispute. The injury sustained by each Class member, while meaningful on an individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions against Defendants. Even if it were economically feasible, requiring thousands of injured plaintiffs to file individual suits would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiff anticipates no unusual difficulties in managing this class action.

50.     **Certification of Particular Issues:** In the alternative, the Classes may be maintained as class actions with respect to particular issues, in accordance with Fed. R. Civ. P. 23(c)(4).

51.     Finally, all members of the purposed Class are identifiable. Defendants have access to addresses and other contact information for members of the Classes, which can be used to identify Class members.

## CHOICE OF LAW

52.     California law applies to Plaintiff's and Class members' claims because (1) both Defendants in this action are headquartered in California, (2) a substantial part of the alleged misleading and deceptive conduct emanated from California, and (3) the bad faith, unfair, and unlawful conduct occurred in California.

53.     In the alternative, the laws of the states in which each Plaintiff and each Class member resides apply.

## COUNT I
## Invasion of Privacy

54.     Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

55.     Plaintiff and Class members reasonably expected that their Consumer Commercial Activity Data and Consumer ID Data would be kept private and secure.

56.     Plaintiff and Class members reasonably expected that their Consumer Commercial Activity Data and Consumer ID Data would not be collected, used, sold, and/or disclosed by Defendants without appropriate notice and/or disclosures.

57.     Defendants unlawfully invaded Plaintiff's and Class members' privacy rights by:

    a. collecting and/or using Plaintiff's and Class members' Consumer Commercial Activity Data and Consumer ID Data without complying with the California Consumer Privacy Act of 2018 sections 1798.100(b) and 1798.110(c);

    b. selling and/or disclosing Plaintiff's and Class members' Consumer Commercial Activity Data and Consumer ID Data without complying with the California Consumer Privacy Act of 2018 section 1798.115(c);

    c. collecting, selling, using and/or disclosing Plaintiff's and Class members' Consumer Commercial Activity Data and Consumer ID Data in a manner highly offensive to a reasonable person;

    d. collecting, selling, using and/or disclosing Plaintiff's and Class members' Consumer Commercial Activity Data and Consumer ID Data without appropriate notice and/or disclosures; and

    e. collecting, selling, using and/or disclosing Plaintiff's and Class members' Consumer Commercial Activity Data and Consumer ID Data without their informed, voluntary, affirmative, and clear consent.

58.     In collecting, selling, using and/or disclosing Plaintiff's and Class members' Consumer Commercial Activity Data and Consumer ID Data, Defendants acted in reckless disregard of Plaintiff's and Class members' privacy rights. Defendants knew or should have known that collecting, selling, using and/or disclosing Consumer Commercial Activity Data and Consumer ID Data, is highly offensive to a reasonable person in Plaintiff's and Class members' position.

59.     Defendants violated Plaintiff's and Class members' right to privacy under the common law.

60.     Defendants violated Plaintiff's and Class members' right to privacy under the California Constitution, Article I, Section 1.

61.     Defendants violated Plaintiff's and Class members' right to privacy under the California Consumer Privacy Act of 2018 sections 1798.100(b), 1798.110(c), and 1798.115(c).

62.     As a direct and proximate result of Defendants' unlawful invasions of privacy, Plaintiff's and Class members' reasonable expectations of privacy were frustrated and defeated. Defendants' unlawful invasions of privacy damaged Plaintiff and Class members as set forth above, and they are entitled to appropriate relief.

## COUNT II
### Violations of California's Unfair Competition Law
### California Business & Professions Code § 17200 et seq.

63.     Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

64.     Section 17200 of the California Business & Professions Code ("UCL") prohibits any "unlawful," "unfair," or "fraudulent" business practices.

65.     Sephora violated, and continues to violate, the "unlawful" and "unfair" prongs of the UCL by transmitting to and sharing with TRE the Consumer Commercial Activity Data and Consumer ID Data it collected from Plaintiff and Class members without the consent or knowledge of Plaintiff and Class members in violation of Plaintiff's and Class members' right to privacy under the common law, California Constitution, Article I, Section 1, and the California Consumer Privacy Act of 2018 sections 1798.100(b), 1798.110(c), and 1798.115(c).

66.     Sephora's practice of transmitting to and sharing with TRE the Consumer Commercial Activity Data and Consumer ID Data it collected from Plaintiff and Class members is and was immoral, unethical, oppressive, unscrupulous, unconscionable,

and/or substantially injurious to Plaintiff and Class members. Sephora's practice is and was also contrary to legislatively declared and public policy and the harm it caused to consumers outweighed its utility, if any.

67.    TRE violated, and continues to violate, the "unlawful" and "unfair" prongs of the UCL by receiving from Sephora the Consumer Commercial Activity Data and Consumer ID Data Sephora collected from Plaintiff and Class members without the consent or knowledge of Plaintiff and Class members in violation of Plaintiff's and Class members' right to privacy under the common law, California Constitution, Article I, Section 1, and the California Consumer Privacy Act of 2018 sections 1798.100(b), 1798.110(c), and 1798.115(c).

68.    TRE's practice of receiving from Sephora the Consumer Commercial Activity Data and Consumer ID Data Sephora collected from Plaintiff and Class members is and was immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members. TRE's practice is and was also contrary to legislatively declared and public policy and the harm it caused to consumers outweighed its utility, if any.

69.    Sephora and TRE violated, and continues to violate, the "unlawful" and "unfair" prongs of the UCL by using the Consumer Commercial Activity Data and Consumer ID Data Sephora collected from Plaintiff and Class members without the consent or knowledge of Plaintiff and Class members in violation of Plaintiff's and Class members' right to privacy under the common law, California Constitution, Article I, Section 1, and the California Consumer Privacy Act of 2018 sections 1798.100(b), 1798.110(c), and 1798.115(c).

70.    Sephora's and TRE's practice of using the Consumer Commercial Activity Data and Consumer ID Data Sephora collected from Plaintiff and Class members is and was immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members. Sephora's and TRE's practice is and was also

contrary to legislatively declared and public policy and the harm it caused to consumers outweighed its utility, if any.

71.    As a direct and proximate result of Sephora's and TRE's unlawful and unfair conduct, Plaintiff and Class members have had their privacy rights violated and lost money and property.

72.    Sephora's and TRE's conduct caused substantial injury to Plaintiff and Class members. Accordingly, Plaintiff seeks an order enjoining Sephora and TRE from committing such unlawful and unfair business practices, and seeks the full amount of money the Plaintiff and Class members paid for the purchased goods and/or restitutionary disgorgement of profits. Plaintiff also seeks attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## COUNT III

### Unconscionability

73.    Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

74.    Sephora's practice of transmitting to and sharing with TRE the Consumer Commercial Activity Data and Consumer ID Data it collected from Plaintiff and Class members without the consent or knowledge of Plaintiff and Class members is and was unfair and unconscionable.

75.    TRE's practice of receiving from Sephora the Consumer Commercial Activity Data and Consumer ID Data Sephora collected from Plaintiff and Class members without the consent or knowledge of Plaintiff and Class members is and was unfair and unconscionable.

76.    Sephora's and TRE's practice of using the Consumer Commercial Activity Data and Consumer ID Data Sephora collected from Plaintiff and Class members without the consent or knowledge of Plaintiff and Class members is and was unfair and unconscionable.

77.     Sephora's and TRE's actions have harmed Plaintiff and Class members and have caused them to suffer damages in an amount to be determined by this Court, including interest on all liquidated sums.

## COUNT IV

### Defamation per se – Private Figure & Matter of Private Concern

78.     Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

79.     This claim is brought on behalf of the Defamation Sub-Class only.

80.     Defamation in the Age of Big-Data Analytics requires fresh analysis. Improperly, negligently, or maliciously analyzing data can harm vast numbers of people in today's commercial environment.

81.     At all times relevant herein, TRE's purported business model has been to detect and identify consumers committing fraud or engaging in organized crime on behalf of its retail clients, including Sephora, and to thwart the fraud or organized crime by preventing those consumers from making returns and exchanges.

82.     At all times relevant herein, Sephora knew and understood that TRE's purported business model has been to detect and identify consumers committing fraud or engaging in organized crime on behalf of its retail clients, including Sephora, and to thwart the fraud or organized crime by preventing those consumers from making returns and exchanges .

83.     At all times relevant herein, Sephora understood and believed that consumers detected and identified by TRE, and prevented from making returns and exchanges by TRE, were committing fraud or engaging in organized crime.

84.     TRE harmed Plaintiff and Defamation Sub-Class members by communicating to Sephora that Plaintiff's and Defamation Sub-Class members' attempted returns and exchanges were fraudulent and/or affiliated with organized crime and should therefore be denied.

85.     Fraud is a crime in <u>every</u> State in the United States.

86.     Organized crime is a federal crime punishable by the Racketeer Influenced and Corrupt Organizations Statute (18 U.S.C. §§ 1961-1968).

87.     Sephora reasonably understood the statements made to it by TRE about Plaintiff and Defamation Sub-Class members to mean that Plaintiff's and Defamation Sub-Class members' attempted returns and exchanges were fraudulent and/or an organized crime and that Plaintiff and Defamation Sub-Class members were committing a crime.

88.     Sephora denied Plaintiff's and Defamation Sub-Class members' attempted returns and exchanges because of the statements made by TRE.

89.     TRE failed to use reasonable care to determine the truth or falsity of the statements it made to Sephora about Plaintiff and Defamation Sub-Class members.

90.     TRE failed to determine or even inquire about the reason for every single return and exchange.

91.     TRE's failure to determine, or even inquire, about the reasons for returns and exchanges is a failure to use reasonable care to determine the truth or falsity of the statements it made to Sephora about Plaintiff and Defamation Sub-Class members.

92.     TRE's defamatory statements to Sephora harmed Plaintiff and Defamation Sub-Class members because Sephora denied returns and exchanges to Plaintiff and Defamation Sub-Class members based wholly upon TRE's defamatory statements.

## COUNT V

## Violation of Fair Credit Reporting Act

93.     Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

94.     As individuals, Plaintiff and Class members are consumers entitled to the protections of the FCRA. 15 U.S.C. § 1681a(c).

95.     Under the FCRA, a "consumer reporting agency" is defined as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information

or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f).

96.    TRE is a consumer reporting agency under the FCRA because, for monetary fees, it regularly engages in the practice of assembling or evaluating information on consumers for the purpose of furnishing consumer reports to third parties.

97.    Under the FCRA, a "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for -- (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1).

98.    The communications by TRE to Sephora were consumer reports under the FCRA because they were communications of information bearing on Plaintiff's and Class members' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living used, or expected to be used or collected in whole or in part, for the purpose of serving as a factor in determining whether or not to permit returns and/or exchanges from consumers.

99.    As a consumer reporting agency, TRE may only furnish consumer reports under the limited circumstances set forth in 15 U.S.C. § 1681b, "and no other." 15 U.S.C. § 1681b(a). None of the purposes listed under 15 U.S.C. § 1681b permit consumer reporting agencies to furnish consumer reports for the purpose of instructing retail businesses to deny returns and/or exchanges. TRE violated § 1681b by furnishing consumer reports to Sephora, as detailed above.

100.    As a consumer reporting agency, the FCRA requires TRE to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a). None of the

purposes listed under 15 U.S.C. § 1681b permit consumer reporting agencies to furnish consumer reports for the purpose of instructing retail businesses to deny returns and/or exchanges. TRE, therefore, violated § 1681e(a) by furnishing consumer reports to Sephora, as detailed above.

101. "No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title." 15 U.S.C. § 1681e(a). None of the purposes listed under 15 U.S.C. § 1681b permit consumer reports to be used for the purpose of permitting retail businesses to deny returns and/or exchanges. TRE knew the purpose for which Sephora was using the consumer reports and knew Sephora's purpose was not a purpose listed in section 1681b. TRE, therefore, further violated § 1681e(a) by furnishing consumer reports to Sephora, as detailed above.

102. TRE acted willfully because it knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission. TRE obtained, or had available, these and other substantial written materials that apprised it of its duties under the FCRA. Any reasonable consumer reporting agency knows or should know about these requirements. Despite knowing of these legal obligations, TRE acted consciously in breaching known duties and depriving Plaintiff and Class members of their rights under the FCRA.

103. Plaintiff and Class members have been damaged by TRE's willful failure to comply with the FCRA. Therefore, Plaintiff and Class members are entitled to recover "any actual damages sustained by the consumer . . . or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

104. Plaintiff and Class members are also entitled to punitive damages, costs of the action, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a)(2),(3).

## COUNT VI

## Unjust Enrichment

105.   Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

106.   Defendants have been unjustly enriched by unlawfully sharing, receiving and using Consumer Commercial Activity Data and Consumer ID Data Sephora collected from Plaintiff and Class members without the consent or knowledge of Plaintiff and Class members.

107.   There is no other adequate remedy at law. It would be unjust and unfair for Defendants to retain any of the benefits obtained from their unlawful conduct.

108.   Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class members all unlawful or inequitable proceeds that Defendants received.

109.   A constructive trust should be imposed on all unlawful or inequitable sums received by Defendants traceable to Plaintiffs and Class members.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Classes, respectfully request that the Court order relief enter judgment in their favor and against Defendants as follows:

A.   An order certifying Plaintiff's proposed Classes and appointing Plaintiff and Plaintiff's counsel to represent the Classes;

B.   An order that Defendants are permanently enjoined from their improper conduct and practices as alleged;

C.   A judgment awarding Plaintiff and Class members appropriate monetary relief, including actual and statutory damages, restitution, and disgorgement;

D.   An order that Defendants pay the costs involved in notifying the Class members about the judgment and administering the claims process;

E.   Pre-judgment and post-judgment interest;

F.   Attorneys' fees, expenses, and the costs of this action; and

G.    All other and further relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED: July 7, 2020                   Respectfully submitted,


*/s/ Tina Wolfson*

Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
10728 Lindbrook Drive
Los Angeles, California 90024
310.474.9111 (*telephone*)
310.474.8585 (*facsimile*)

Cornelius P. Dukelow*
Oklahoma Bar No. 19086
**ABINGTON COLE + ELLERY**
320 South Boston Avenue
Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (*telephone & facsimile*)
cdukelow@abingtonlaw.com
www.abingtonlaw.com

**Pro Hac Vice* application to be submitted

*Counsel to Plaintiff and the Proposed Classes*

---

CLASS ACTION COMPLAINT - 21 -