UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHADI HAYDEN; WILLIAM HANNUM; MICHAEL MURPHY; SEAN FREDERICK; OLGA MARYAMCHIK; VICTORIA CARUSO-DAVIS; ERIC GILBERT; SUSANA GUEVARA; JACQUELINE SMITH; CAROL JULIAN-MOYE; CHRISTINE ALIRE; JERRY HO; and CAROL LLOYD, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>    v.<br><br>THE RETAIL EQUATION, INC.; SEPHORA USA, INC.; ADVANCE AUTO PARTS, INC.; BED BATH & BEYOND INC.; BEST BUY CO., INC.; BUY BUY BABY, INC.; CALERES, INC.; CVS HEALTH CORPORATION; DICK'S SPORTING GOODS, INC.; L BRANDS, INC.; STEIN MART, INC.; THE GAP, INC.; THE HOME DEPOT, INC.; and THE TJX COMPANIES, INC.,<br><br>      Defendants. | Case No. 8:20-cv-01203-JWH-DFMx<br><br>**ORDER ON MOTION OF DEFENDANT THE GAP, INC. TO COMPEL ARBITRATION [ECF No. 140]** |

## I. INTRODUCTION

Before the Court is the Motion to Compel Individual Arbitration and to Dismiss filed by Defendant The Gap, Inc.[1] Plaintiff Christine Alire filed an Opposition[2] to the Motion, and The Gap filed a Reply.[3] The Court heard oral argument on April 27, 2021. For the reasons explained below, the Court **DENIES** the Motion.

## II. BACKGROUND

Plaintiff Alire applied for and opened a Gap credit card account on May 20, 2019.[4] As part of The Gap's standard application process, Alire was provided the Gap credit card's terms and conditions.[5] Synchrony Bank issues all Gap credit cards.[6] The Gap credit card permits cardholders to accrue rewards points to be used in future purchases.[7]

The Motion includes a Declaration by Ross Kline, Senior Manager of Loyalty & Payments at The Gap.[8] The Kline Declaration provides a copy of the Credit Card Agreement to which Alire purportedly consented in May 2019.[9] The Credit Card Agreement is entitled, "GAP INC. VISA® CARD ACCOUNT AGREEMENT."[10]

---

[1] Mot. to Compel Individual Arbitration and to Dismiss of Def. The GAP Inc. (the "Motion") [ECF No. 140].
[2] Pl. Christine Alire's Opp'n to the Motion (the "Opposition") [ECF No. 166].
[3] Reply in Supp. of Motion (the "Reply") [ECF No. 194].
[4] Decl. of Ross Kline in Supp. of Motion (the "Kline Declaration") [ECF No. 140-1] ¶ 5.
[5] Id.
[6] Id. at 6.
[7] Id. at 7
[8] See generally id.
[9] Id. at 8, Ex. A (the "Credit Card Agreement").
[10] Id.

The Credit Card Agreement contains the following statements under the heading "ABOUT THE CREDIT CARD ACCOUNT AGREEMENT":

> **This Agreement.** This is an Agreement *between you and Synchrony Bank*, 170 Election Road, Suite 125, Draper, UT 84020, for your credit card account shown above. By opening or using your account, you agree to the terms of the entire Agreement. The entire Agreement includes the four sections of this document and the application you submitted to us in connection with the account. These documents replace any other agreement relating to your account that you or we made earlier or at the same time.
>
> **Parties To This Agreement.** This Agreement applies to each accountholder approved on the account and each of you is responsible for paying the full amount due, no matter which one uses the account. We may treat each of you as one accountholder and may refer to each of you as "you" or "your." *Synchrony Bank may be referred to as "we," "us" or "our."*[11]

With respect to arbitration, the Credit Card Agreement states,

> PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT AND PURCHASES, AND **MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION**. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR

---

[11] *Id.* (second and fourth emphases added).

> PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.[12]

The Terms and Conditions also provide a means to opt out of the arbitration agreement by sending a notice to Synchrony Bank "within 60 days after you open your account or we first provided you with your right to reject this section."[13] The agreement further states,

> ***You and we* must arbitrate** any dispute or claim between you or any other user of your account, and us, our affiliates, agents **and/or The Gap, Inc. if it relates in any way to purchases from us or The Gap, Inc., including any of its brands**, your account, and this agreement except as noted below.[14]

With respect to choice of law, the Credit Card Agreement states: "Except as provided in the Resolving a Dispute with Arbitration section, this Agreement and your account are governed by federal law and, to the extent state law applies, the laws of Utah without regard to its conflicts of law principles."[15] Within the "Resolving a Dispute with Arbitration" section, under the subheading "Governing Law for Arbitration," the Credit Card Agreement provides as follows:

> This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any

---

[12] *Id.* (emphasis added).
[13] *Id.*
[14] *Id.* (emphases added).
[15] *Id.*

court with jurisdiction may enter judgment upon the arbitrator's award.[16]

### III. LEGAL STANDARD

The Federal Arbitration Act (the "FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a general policy favoring arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) ("Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate."). This statute's principal purpose is to "ensure that private arbitration agreements are enforced according to their terms." *Concepcion*, 563 U.S. at 347 n.6. "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *Id.* at 351.

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such an arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.* If such a showing is made, the district court shall also stay the proceedings, pending the resolution of the arbitration, at the request of one of the parties bound to arbitrate. *Id.* at § 3.

### IV. DISCUSSION

"Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to

---

[16] *Id.*

arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original) (quotations and citations omitted). Nonetheless, The Gap argues that it has a right to enforce the arbitration clause in the Credit Card Agreement because it is an intended third-party beneficiary of the contract.[17] A non-party may enforce an arbitration agreement in some cases "[b]ecause 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)). The agreement at issue provides that "Utah law shall apply to the extent state law is relevant under the FAA."[18] Accordingly, to determine whether The Gap is a third-party beneficiary entitled to compel arbitration under the Credit Card Agreement, the Court applies Utah law.[19]

In *Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051 (10th Cir. 2018), the Tenth Circuit applied Utah law to a similar arbitration agreement. There, Cavlovic entered into an agreement with GE Capital Retail Bank for a J.C. Penney-branded credit card. *Id.* at 1053-54. The credit card agreement contained the following arbitration provision:

> **If either you or we make a demand for arbitration**, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or J.C. Penney Corporation, Inc. if it relates to your account, except as noted below . . . .

---

[17] *See* Motion at 12:7-14:15.
[18] Kline Declaration, Ex. A.
[19] At the hearing, counsel for The Gap agreed that Utah law applied but also argued that the same result would be reached under California law. Hearing Tr. 63:15-64:5.

*Id.* at 1057 (emphasis and alteration in original).

As in this case, the retailer (*i.e.*, J.C. Penney) was not a party to the credit card contract. *Id.* The Tenth Circuit concluded that "the contract, on its face, does not provide for such a third party demand." *Id.* The Tenth Circuit noted that "[i]n rare circumstances, a third party can also enforce the contract, but only if the parties to the contract *clearly* express an intention to confer a separate and distinct benefit on the third party." *Id.* at 1057-58 (quoting *Bybee v. Abdulla*, 189 P.3d 40, 49 (Utah 2008)) (emphasis added). The court explained that the agreement did "not evidence a clear intent to provide J.C. Penney—a third party—with the right to demand arbitration under" the credit card agreement, and, therefore, J.C. Penney could not invoke the arbitration clause. *Id.* at 158.

Similar reasoning applies to the Credit Card Agreement in this case. Here, the Credit Card Agreement states, "You and we must arbitrate any dispute or claim . . . ."[20] The Credit Card Agreement further provides that "Synchrony Bank may be referred to as 'we,' 'us' or 'our.'"[21] Thus, a plain reading of the clause indicates that Alire and Synchrony Bank—not The Gap— must arbitrate disputes between Alire and Synchrony Bank. The Gap's interpretation elides the portion of the provision of the agreement that states "and we," instead interpreting the arbitration clause as follows:

> You [*i.e.*, Alire] . . . must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or The Gap, Inc. if it relates in any way to purchases from us or The Gap, Inc., including any of its brands, your account, and this agreement except as noted below.[22]

---

[20] Kline Declaration, Ex. A.
[21] *Id.*
[22] *Id.*

But this elision changes the meaning of the arbitration agreement. *See id.* (a party cannot "'change or rewrite' the terms of an agreement to broaden the plain language—even in the face of the policy favoring arbitration"). When given its most natural reading, the plain language of the arbitration agreement provides that Alire and Synchrony Bank must arbitrate any dispute or claim, and then it proceeds to specify the types of claims that must be arbitrated.[23]

The Gap argues that "[i]n *Cavlovic*, the court denied a motion to compel arbitration because the arbitration provision only required arbitration if either the customer or GE Capital Retail Bank had made a demand for arbitration, and neither had."[24] The Gap correctly notes that in *Cavlovic* the phrase "you and we must arbitrate" was preceded by a condition precedent, which stated: "If either you or we make a demand for arbitration . . . ." *Cavlovic*, 884 F.3d 1057. While this language certainly makes it clearer that The Gap could not invoke the arbitration clause in *Cavlovic*, taken as a whole, the arbitration agreement at issue here still does not indicate an intention to make The Gap a third-party beneficiary. For example, the capitalized, boldface text that appears directly under the heading "RESOLVING A DISPUTE WITH ARBITRATION" states, "MOST DISPUTES BETWEEN YOU AND *US* WILL BE SUBJECT TO INDIVIDUAL ARBITRATION."[25] Likewise, the class action waiver, which is also in capitalized and boldface text, states, "YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE

---

[23] The arbitration agreement is most naturally read to provide that Alire and Synchrony Bank will jointly arbitrate their disputes. Notably, because the arbitration agreement pertains to a credit card, Alire and Synchrony Bank might also have to arbitrate a dispute between Alire and The Gap if, for instance, Alire were to dispute a charge to her credit card regarding a purchase at The Gap. The inclusion of the language "and/or The Gap, Inc." does not compel the conclusion that Alire has a separate obligation to arbitrate her disputes with The Gap that do not involve Synchrony Bank.

[24]     *Id.* at 9:16-20.

[25]     *Id.* (emphasis added).

ATTORNEY GENERAL ACTION AGAINST *US* IN COURT OR ARBITRATION."[26]  As discussed above, the Credit Card Agreement provides that Synchrony Bank—not The Gap—"may be referred to as 'we,' 'us' or 'our.'"[27]

This interpretation is also confirmed by the instructions for commencing arbitration, which state that Alire's notice demanding arbitration "must be sent to **Synchrony Bank**, Legal Operation, P.O. Box 29110, Shawnee Mission, KS 66201-5320, ATTN: ARBITRATION."[28]  It seems unlikely that the parties would expect a demand for arbitration solely against The Gap—that does not involve Synchrony Bank—to be sent to Synchrony Bank.  At a minimum, the arbitration agreement cannot be said "***clearly*** [to] express an intention to confer a separate and distinct benefit on [The Gap]." *Cavlovic*, 884 F.3d at 1057-58 (emphasis added).

Having concluded that The Gap cannot invoke the arbitration provision in the Credit Card Agreement, the Court need not address the parties' other arguments.

## V.  CONCLUSION

For the foregoing reasons, the Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 8, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[26]   *Id.* (emphasis added).
[27]   *Id.*
[28]   *Id.* (emphasis added).