Ronald I. Raether, Jr., Bar No. 303118
ron.raether@troutman.com
Sadia Mirza, Bar No. 290563
sadia.mirza@troutman.com
Oscar A. Figueroa, Bar No. 313238
oscar.figueroa@troutman.com
**TROUTMAN PEPPER**
**HAMILTON SANDERS LLP**
5 Park Plaza, Suite 1400
Irvine, CA 92614
Telephone: 949.622.2700
Facsimile: 949.622.2739

Cindy D. Hanson (*Pro Hac Vice*)
cindy.hanson@troutman.com
**TROUTMAN PEPPER**
**HAMILTON SANDERS LLP**
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308
Telephone: 404.885.3000
Facsimile: 404.885.3900

Attorneys for Defendants
THE RETAIL EQUATION, INC. &
APPRISS INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| SHADI HAYDEN, et al., | Case No. 8:20-cv-01203-JWH-DFM |
| Plaintiffs, | Honorable John W. Holcomb |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE RETAIL EQUATION, INC.'S RULE 12(b)(6) MOTION TO DISMISS** |
| THE RETAIL EQUATION, INC., et al., | |
| Defendants. | Date: December 10, 2021<br>Time: 9:00 a.m.<br>Place: Courtroom 2 |

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.  RELEVANT ALLEGATIONS ................................................................. 2

    A.   Plaintiffs' Return/Exchange Experience with Retail Defendants ........ 2

    B.   TRE's Software-as-a-Service Solution ................................................ 5

III. ARGUMENT ............................................................................................ 5

    A.   Plaintiffs Fail to State a Claim Under the FCRA (Claim III) .............. 5

        1.   Plaintiffs' 1681e(b) claim must be dismissed because the FCRA's "consumer report" definition embraces only data collected or used in making certain eligibility determinations regarding the consumer ..................................... 6

        2.   Plaintiffs fail to allege sufficient facts supporting their allegation that TRE is a CRA, thus requiring dismissal of each of their FCRA claims. ................................................. 8

        3.   Because the SAC does not allege Plaintiffs requested their file disclosures or disputed any information with TRE, Plaintiffs' 1681g(f), 1681j and 1681i claims must be dismissed. ................................................................................ 9

        4.   Section 1681j imposes requirements on only a limited subset of consumer reporting agencies. .................................. 10

    B.   Plaintiffs Fail to State a Claim for Invasion of Privacy (Claim I) ...... 11

        1.   Certain Plaintiffs' invasion of privacy claims are time-barred. ................................................................................ 11

        2.   Plaintiffs' SAC fails to address the deficiencies in the FAC. ................................................................................... 12

        3.   Plaintiffs do not plead sufficient facts to allege an invasion of privacy claim. ....................................................... 15

    C.   Plaintiffs Fail to State a Claim for Violation of California's Unfair Competition Law (Claim II) ................................................... 20

        1.   Plaintiffs lack standing to assert a UCL claim. ....................... 20

        2.   Plaintiffs' UCL claim fails because the predicate claims it relies upon also fail. ............................................................... 22

    D.   Plaintiffs Fail to State a Claim for Unjust Enrichment (Claim IV) ..................................................................................................... 22

        1.   Plaintiffs fail to allege TRE was unjustly conferred a benefit through mistake, fraud, coercion or request. ................ 23

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

-i-

1

**TABLE OF CONTENTS**
**(continued)**

2

**Page**

3

2.    No relationship exists between Plaintiffs and TRE. ................ 23

4

3.    Plaintiffs' unjust enrichment claim fails because the
predicate claims it relies upon also fail. ................................ 24

5

E.    The SAC Should be Dismissed with Prejudice. ................................ 24

6

IV.    ARBITRATION ............................................................................ 24

7

V.    CONCLUSION ............................................................................ 24

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

# TABLE OF AUTHORITIES

**Page**

CASES

*Apple Inc. v. Superior Court*, 56 Cal. 4th 128 (2013) .............................................. 18

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ................... 22, 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................... 9, 10

*Belluomini v. Citigroup, Inc.*, No. 13-01743, 2013 U.S. Dist. LEXIS
103882 (N.D. Cal. July 23, 2013) ............................................................ 19

*Brown v. HomeStreet Bank*, No. 18-2379, 2019 U.S. Dist. LEXIS
220115 (C.D. Cal. Sept. 10, 2019) ........................................................... 22

*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) .................................... 11

*Darrin v. Bank of Am., N.A.*, No. 2:12-cv-00228, 2013 U.S. Dist.
LEXIS 31941 (E.D. Cal. Mar. 7, 2013) ...................................................... 9

*Dix v. Nova Benefit Plans, LLC*, No. 14-08678, 2015 U.S. Dist. LEXIS
190409 (C.D. Cal. Apr. 28, 2015) ............................................................. 24

*Doe I. v. Wal-Mart Stores, Inc.*, 572 F.3d 677 (9th Cir. 2009) ............................... 23

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, No. 15-
0736, 2018 U.S. Dist. LEXIS 231098 (C.D. Cal. May 1, 2018)........................ 20

*ESG Cap. Partners, LP v. Stratos*, 828 F. 3d 1023 (9th Cir. 2016) ........................ 22

*In re Facebook Privacy Litigation*, 791 F. Supp. 2d 705 (N.D. Cal.
2011)........................................................................................ 20

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir.
2020)................................................................................... 15, 18

*In re Google Location History Litig.*, 428 F. Supp. 3d 185 (N.D. Cal.
2019)................................................................................... 16, 17

*Heldt v. Guardian Life Ins. Co. of Am.*, No. 16-cv-885, 2019 U.S. Dist.
LEXIS 25315 (S.D. Cal. Feb. 15, 2019) ............................................ 17

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) ............................................. 17

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

-iii-

1

## TABLE OF AUTHORITIES
### (continued)

**Page**

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............... 19

*In re iPhone Application Litig.*, No. 11-MD-02250, 2011 U.S. Dist.
    LEXIS 106865 (N.D. Cal. Sept. 20, 2011) ................................... 20, 21

*Ippolito v. WNS, Inc.*, 864 F.2d 440 (7th Cir. 1988) .................................. 6

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)........................... 21

*Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060 (C.D. Cal. 2008) ............................... 11

*Love & War, LLC v. Wild Bunch A.G.*, No. 18-3773, 2018 U.S. Dist.
    LEXIS 223158 (C.D. Cal. Dec. 21, 2018) ........................................... 22

*Nguyen v. Stephens Inst.*, No. 20-cv-04195, 2021 U.S. Dist. LEXIS
    60820 (N.D. Cal. Mar. 30, 2021) ...................................... 22, 23

*Pavone v. Meyerkord & Meyerkord, LLC*, No. 15 C 1539, 2016 U.S.
    Dist. LEXIS 112190 (N.D. Ill. Aug. 23, 2016) ..................................... 7

*Rasmusson v. Chisago Cnty.*, 991 F. Supp. 2d 1065 (D. Minn. 2014).................... 19

*Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995) ........................ 14

*Rooney v. Sierra Pac. Windows*, No. 10-cv-00905, 2011 U.S. Dist.
    LEXIS 117294 (N.D. Cal. Oct. 11, 2011)........................................... 22

*Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010)................................... 20

*ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d. 1336 (Fed. Cir.
    2016)................................................................ 15

*Skiles v. Tesla, Inc.*, 440 F. Supp. 3d 1012 (N.D. Cal. 2020)................................... 7

*Spice Jazz LLC v. Youngevity Int'l, Inc.*, No. 19-cv-583, 2020 U.S.
    Dist. LEXIS 42364 (S.D. Cal. Mar. 11, 2020)........................... 23, 24

*Thompson v. Home Depot, Inc.*,
    No. 07cv1058, 2007 U.S. Dist. LEXIS 68918 (S.D. Cal. Sept.18,
    2007)................................................................ 20

*TJX Cos., Inc. v. Superior Court*, 163 Cal. App. 4th 80 (2008).............................. 18

-iv-

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Corinthian Coll.*, 655 F.3d 984 (9th Cir. 2011) ............................... 5

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d
    870 (Fed. Cir. 1991) ......................................................................... 14

*Vysata v. Menowitz*, No. 18-06157, 2019 U.S. Dist. LEXIS 226702
    (C.D. Cal. July 12, 2019)......................................................... 23

*In re Yahoo! Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................. 17, 18, 19

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009).................. 24

**RULES**

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1

**STATUTES**

15 U.S.C. § 1681a(x) .......................................................................................... 10

15 U.S.C. § 1681a(d) ........................................................................................ 6, 7

15 U.S.C. § 1681a(f) ......................................................................................... 6, 8

15 U.S.C. § 1681a(r)(5) .......................................................................................... 7

15 U.S.C. § 1681e(b) .............................................................................................. 8

15 U.S.C. § 1681g(f) ........................................................................................... 8, 9

15 U.S.C. § 1681i(a)(1)(A)................................................................................. 8, 9

15 U.S.C. § 1681j(a)(1)(A)............................................................................. 8, 9, 10

15 U.S.C. § 1691a ............................................................................................... 7, 8

Cal. Civ. Code § 1723.......................................................................................... 21

California's Unfair Competition Law................................................ 2, 20, 21, 22, 24

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# TABLE OF AUTHORITIES
### (continued)

**Page**

**OTHER AUTHORITIES**

CONSUMER FINANCIAL PROTECTION BUREAU,
    https://www.consumerfinance.gov/askcfpb/5/how-do-i-get-my-
    credit-reports.html (August 26, 2021) ................................................................. 10

*Free Credit Reports*, FTC,
    https://www.consumer.ftc.gov/articles/0155-free-credit-reports (last
    visited August 26, 2021) ..................................................................................... 10

FTC, *40 Years of Experience with the FCRA: An FTC Staff Report
with Summary of Interpretations* 20, § 1 (2011), *available at*
    https://www.ftc.gov/sites/default/files/documents/reports/40-years-
    experience-fair-credit-reporting-act-ftc-staff-report-summary-
    interpretations/110720fcrareport.pdf ................................................................. 8, 9

U.S. Patent No. 7,455,226
    ................................................................................................................... 13, 14, 15

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant The Retail Equation, Inc. ("TRE"), by counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), moves this Court to dismiss Plaintiffs' Second Amended Complaint ("SAC") for failure to state a claim for relief.

## I.   INTRODUCTION

Plaintiffs' SAC suffers from the same deficiencies that caused this Court to dismiss the First Amended Complaint ("FAC"). While Plaintiffs attempt to revise certain of their allegations to address the Court's previous Order, the SAC still fails to state a claim for relief. Like the FAC, the SAC must be dismissed in its entirety.

TRE provides a Software-as-a-Service ("SaaS") solution that uses statistical modeling and analytics to detect fraudulent and abusive behavior when returns are processed at a retailer's return counter. *See* SAC ¶¶ 22, 35. TRE is a service provider that simply licenses its return authorization software to each of its retail customers to help those retailers prevent potentially fraudulent returns. Despite this limited role, Plaintiffs assert four claims against TRE for (1) violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"); (2) invasion of privacy; (3) violation of California's Unfair Competition Law, California Bus. & Prof. Code § 17200, *et seq.* ("UCL"); and (4) unjust enrichment. Even accepting Plaintiffs' allegations as true, Plaintiffs' claims fail as a matter of law.

*First,* Plaintiffs' FCRA claims fail on multiple, independent grounds. Most notably, Plaintiffs' allegations do not plausibly allege TRE is a "consumer reporting agency" ("CRA") that provides "consumer reports," thus requiring dismissal of their FCRA claims outright. The FCRA is purposefully limited in scope and its application does not depend solely on the type or source of information. Rather, the FCRA only applies when information is collected and used to determine eligibility for one of the FCRA permissible purposes, *i.e.*, eligibility for credit, employment, or insurance. Here, Plaintiffs specifically allege the FCRA is inapplicable, *i.e.*, the data at issue is collected and used only for a purpose outside of the listed FCRA permissible

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

purposes.  Indeed, because return authorization is not an FCRA purpose, TRE is not a CRA and Plaintiffs' FCRA claims fail as a matter of law.  Plaintiffs' convoluted attempt to equate a "store credit" with a credit eligibility decision finds no support in the statute or the case law.

*Second,* Plaintiffs' invasion of privacy claim fails because TRE did not disseminate or misuse Plaintiffs' information; Plaintiffs allege no facts as to why or how they had a reasonable expectation of privacy with respect to the information TRE processed as a service provider on behalf of each retailer; and Plaintiffs allege no facts supporting a conclusion that TRE's alleged conduct resulted in a serious invasion of privacy.  Certain Plaintiffs' invasion of privacy claims are also time-barred and thus must be dismissed with prejudice.

*Third,* with respect to Plaintiffs' UCL claim, Plaintiffs fail to allege the requisite causal connection between the alleged conduct of TRE and whatever lost money or property they allege to satisfy the statutory standing requirements.

*Fourth*, Plaintiffs' unjust enrichment claim must be dismissed because Plaintiffs fail to plausibly allege a benefit conferred on TRE or the requisite relationship between Plaintiffs and TRE.  The predicate claims that the unjust enrichment claim rely upon also fail.

For those reasons, and the reasons set forth below, TRE respectfully requests that Plaintiffs' SAC be dismissed with prejudice.

## II.   RELEVANT ALLEGATIONS

### A.   Plaintiffs' Return/Exchange Experience with Retail Defendants

Plaintiffs' claims center around the "Retail Defendants" allegedly denying their return or exchange.  SAC ¶¶ 53, 66, 78, 90, 102, 114, 126, 138, 151, 164, 177, 190, 203, 215.[1]  First, Plaintiffs allege they each went to a particular Retail Defendant

---

[1] The "Retail Defendants" are Co-Defendants Sephora USA, Inc., Bed Bath & Beyond, Inc., CVS Pharmacy, Inc., L Brands, Inc., Stein Mart, Inc., The Gap, Inc., The Home Depot, Inc., and the TJX Companies, Inc.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

to return or exchange unspecified merchandise. *Id.* at ¶¶ 42, 55, 68, 80, 92, 104, 116, 128, 140, 153, 166, 179, 192, 205. Second, the Plaintiffs – except Plaintiffs Julian-Moye, Naidu and Chapa – allege they provided some form of identification to the sales associate. Below is chronology of each Plaintiffs' transactions as alleged:[2]

| Plaintiff (Residence) | Store and Location | Date of transaction | Alleged form of identification |
|---|---|---|---|
| 1. Jacqueline Smith (CA) | L Brands's Victoria's Secret in CA | July 20, 2018. *Id.* at ¶ 80. | Driver's license and email address. SAC ¶ 81. |
| 2. Carol Julian-Moye (SC) | Stein Mart in SC | Jan. 2, 2019. *Id.* at ¶ 92. | None. *See* SAC ¶ 93. |
| 3. Carol Lloyd (NJ) | TJ Maxx in NJ | May 9, 2019. *Id.* at ¶ 128. | Driver's license. SAC ¶ 129. |
| 4. Shadi Hayden (CA) | Sephora in CA | July 9, 2019. *Id.* at ¶ 42. | Sephora Rouge VIP account information. SAC ¶ 43. |
| 5. Christine Alire (CA) | Athleta in CA | Jan. 8, 2020. *Id.* at ¶ 104. | Driver's license, credit card, phone number, and email address. SAC ¶ 105. |
| 6. Eric Gilbert (FL) | CVS in FL | Mar. 7, 2020. *Id.* at ¶ 68. | Driver's license. SAC ¶ 69. |
| 7. Jerry Ho (CA) | Home Depot in CA | May 28, 2020. *Id.* at ¶ 116. | Driver's license. SAC ¶ 117. |
| 8. Michael Murphy (WA) | Bed Bath & Beyond in WA | July 13, 2020. *Id.* at ¶ 55. | Driver's license and credit card. SAC ¶ 56. |
| 9. Sylvia Padro (CA) | Sephora in CA | October 10, 2020. *Id.* at ¶ 140. | Driver's license, credit card and email address. SAC ¶ 141. |
| 10. Sowbhagia Naidu (CA) | Sephora in CA | October 10, 2019. *Id.* at ¶ 153. | None. *See* SAC ¶ 154. |

---

[2] On September 16, 2021, Plaintiffs filed a Notice of Withdrawal of Opposition and Non-Opposition to Dismissal Without Prejudice of Individual Claims of Plaintiffs Michael Murphy and Carol Lloyd. Dkt. No. 277. However, Plaintiffs Murphy and Lloyd have yet to be officially dismissed from the case. Accordingly, TRE addresses Plaintiffs Murphy and Lloyd's allegations and claims in this motion.

| 11. Alexandra Solorzano (CA) | L Brands's Bath & Body Works in CA | December 11, 2020. *Id.* at ¶ 166. | Driver's license.  SAC ¶ 167. |
|---|---|---|---|
| 12. Traci Duncan White (CA) | Bed Bath & Beyond in CA | October 3, 2019. *Id.* at ¶ 179. | Receipt, credit card, and driver's license.  SAC ¶ 180. |
| 13. Mayce Al Kuraishi (CA) | CVS in CA | July 16, 2021. *Id.* at ¶ 192. | Driver's license and credit card.  SAC ¶ 193. |
| 14. Stephanie Chapa (CA) | Marshalls in CA | April 1, 2021. *Id.* at ¶ 205. | None.  *See* SAC ¶ 206. |

Plaintiffs then allege a sales associate for the particular Retail Defendant entered their "identifying and transaction information" into its computer system and transmitted the "identifying transaction information" to TRE.  *Id.* at ¶¶ 44–45, 57–58, 69–70, 81–82, 93–94, 105–06, 117–18, 129–30, 142–43, 155–56, 168–69, 181–82, 194–95, 206–07.  Third, Plaintiffs allege TRE processed the transmitted data through its "'return authorization system'" which uses "'predictive algorithms and statistical models'" to "generate[] a consumer report containing a 'risk score' for each consumer attempting to return or exchange merchandise at one of Retail Defendants' stores[.]"  *Id.* at ¶¶ 22, 35.  "The 'risk score' is TRE's assessment of the likelihood the return or exchange consumer is committing fraud, or other organized crime within retail."  *Id.* at ¶ 35.  Depending on the risk score, TRE notifies the Retail Defendant that the attempted returns or exchanges should be denied.  *Id.*  Plaintiffs allege the risk score is used "for the purpose of serving as a factor in determining whether or not to issue consumers store credit in exchange for returned products."  *Id.* at ¶ 254.

Finally, shortly after transmitting Plaintiffs' "identifying and transaction information" to TRE, Plaintiffs allege the sales associate informed them that the return or exchange was declined or flagged as potentially fraudulent noting that future attempts to return or exchange merchandise would be declined, and were presented a printout stating the return or exchange providing contact information for TRE.  *Id.*

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

-4-

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

at ¶¶ 51–52, 64–65, 76–77, 88–89, 100–01, 112–13, 124–25, 137, 149–50, 162–63, 175–76, 188–89, 201–02, 213–14.  Not one Plaintiff alleges they ever contacted TRE.

### B.   TRE's Software-as-a-Service Solution

Plaintiffs refer to TRE's "Frequently Asked Questions," available at https://www.theretailequation.com/frequently-asked-questions/ (the "FAQs").  *See* SAC ¶ 19 n.1.[3]  The FAQs make clear *inter alia*:  TRE "is a service provider that helps retail companies detect and prevent potentially fraudulent returns and reduce return policy abuse."  *See* FAQs, "What is The Retail Equation?"  In terms of how the software functions, "TRE Return Authorization examines the purchase and return data from a specific retailer. . . . The system then analyzes the consumer's return history with that retailer to identify activity that appears to be fraudulent or abusive or in violation of the retailer's return policies."  *See id*. at "How does the system work?"  In making return authorization recommendations, the factors that TRE relies on "varies from one retailer to the next." *See id*. at "What factors does TRE Return Authorization use to determine if a reseller should accept a consumer's return?" "[T]he system does not share consumer data among retailers." FAQs, "Does the TRE Return Authorization system share consumer data among retailers?" (emphasis added.)

## III.   ARGUMENT

### A.   Plaintiffs Fail to State a Claim Under the FCRA (Claim III)

Plaintiffs assert a claim against TRE for alleged violations of sections 1681e(b), 1681i, 1681g, and 1681j of the FCRA.  As Plaintiffs acknowledge, their claims depend on establishing: (1) the risk score TRE provides to the Retail

---

[3] *See* Declaration of Leticia Cardoso, ¶ 2, Ex. A. The Court may consider the FAQs as they are relied upon and central to Plaintiffs' claims. *See United States v. Corinthian Coll.*, 655 F.3d 984, 999 (9th Cir. 2011) ("We may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document.").

Defendants is a "consumer report," (2) TRE is a CRA, and (for three out of their four FCRA claims) (3) Plaintiffs took some affirmative action to either dispute information with TRE or request their file from TRE.  *See, e.g.,* SAC ¶¶ 251, 254, 257.  Plaintiffs' SAC fails to allege facts satisfying any of these required elements.

> **1.      Plaintiffs' 1681e(b) claim must be dismissed because the FCRA's "consumer report" definition embraces only data collected or used in making certain eligibility determinations regarding the consumer.**

Plaintiffs fail to allege facts that TRE published a "consumer report" about Plaintiffs.  The FCRA's provisions are directed at "consumer reports," 15 U.S.C. § 1681a(d), and "consumer reporting agencies," 15 U.S.C. § 1681a(f).  The former are reports prepared for use by creditors, insurers, employers, and certain others in determining whether to offer consumers credit, insurance, or employment or to provide other statutorily-enumerated benefits sought by consumers.  The latter are businesses that regularly furnish consumer reports to third parties.

The FCRA does not regulate the use of all information about consumers for every purpose imaginable.  *See Ippolito v. WNS, Inc.*, 864 F.2d 440, 453 (7th Cir. 1988) (the FCRA does not "regulate all information on consumers[;] [i]t regulates information that is 'used or expected to be used or collected' for one of the 'consumer purposes' set forth in the definition of a 'consumer report'").  Indeed, whether information is subject to the FCRA does not depend solely on the type of data or the source, but instead also on how and why the information is used.  To qualify as a "consumer report," the report must be "used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1).

Plaintiffs allege the risk score provided by TRE was used to determine "whether or not to issue consumers store credit in exchange for returned products."

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

SAC ¶ 254.[4]  This allegation does not support any reasonable inference the risk score was used to determine eligibility for an FCRA-enumerated purpose.   More specifically, Plaintiffs did not plead any facts the risk score was used or expected to be used to determine Plaintiffs' eligibility for credit, insurance, employment or to determine eligibility for another purpose in connection with which a consumer report may be used under the FCRA.  This is fatal to Plaintiffs' claims.  *See* Dkt. No. 247 at 10 ("[Plaintiffs] must allege that [the risk score] was used or expected to be used in connection with one of the 'specifically enumerated transactions' in Section 1681a(d) or Section 1681b(3)(A)-(E), 'i.e., credit, insurance eligibility, employment or licensing.'"); *Skiles v. Tesla, Inc.*, 440 F. Supp. 3d 1012, 1016–17 (N.D. Cal. 2020) (dismissing FCRA claim for failure to adequately allege the report sent by the defendant was a consumer report); *Pavone v. Meyerkord & Meyerkord, LLC*, No. 15 C 1539, 2016 U.S. Dist. LEXIS 112190, at *16–17 (N.D. Ill. Aug. 23, 2016) (dismissing FCRA claim for failure to allege the information at issue was used or expected to be used for a specified purpose under the FCRA).

Plaintiffs will likely argue a "store credit" is somehow equivalent to a "credit transaction"; it is not.  The term "credit" under the FCRA has the same meaning as in the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691a.  15 U.S.C. § 1681a(r)(5).  Under ECOA, "credit" is defined as "the right granted by a creditor

---

[4]   Presumably in light of the Court's Order dismissing the FAC (Dkt. No. 247), Plaintiffs revised their allegations in an attempt to focus on "store credit" versus returns and exchanges.  *Compare* FAC ¶ 242 ("for the purpose of serving as a factor *in determining whether or not to permit returns and/or exchanges from consumers*") *with* SAC ¶ 254 ("for the purpose of serving as a factor *in determining whether or not to issue consumers store credit in exchange for returned products*").  With the exception of Plaintiff Al Kuraishi, Plaintiffs now also claim they "expected to receive, at a minimum, store credit in exchange for the return[.]"  SAC ¶¶ 42, 55, 68, 80, 92, 104, 116, 128, 140, 153, 166, 179, 205.

Despite these revisions in the SAC, the allegations relevant to the named Plaintiffs remain the same – that is, the Plaintiffs still continue to only allege they were "prevented from completing the return or exchange" or "prevented from making future returns or exchanges without a receipt."  *See* SAC ¶¶ 53, 66, 78, 90, 102, 114, 126, 138, 151, 164, 177, 190, 203, 215.  Put differently, the alleged "eligibility" determination appears to remain the same.  Regardless, under either scenario (returns/exchanges or store credit), Plaintiffs fail to state a claim for relief under the FCRA.

-7-

to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor."  15 U.S.C. § 1691a(d). Plaintiffs' SAC includes no allegations (nor could it) that "store credit" is the same as a creditor and debtor relationship.  The Retail Defendants are not issuing "credit" to consumers who are provided with a store credit; there is no deferral of debt.  To the contrary, the Retail Defendants already have the consumers' payment for the goods.  If the consumer chooses not to redeem the store credit, the Retail Defendants maintain the full profit.  The debt, if there is one, is actually owed by the Retail Defendant to the consumer; the exact opposite situation contemplated by the FCRA.

In sum, the allegations in the SAC support only one conclusion:  the information was neither collected nor used for an FCRA purpose and is not a "consumer report."  Therefore, the FCRA does not apply as a matter of law and Plaintiffs' 1681e(b) claim must be dismissed.

> **2.      Plaintiffs fail to allege sufficient facts supporting their allegation that TRE is a CRA, thus requiring dismissal of each of their FCRA claims.**

Each of Plaintiffs' FCRA claims also requires Plaintiffs to allege TRE is a CRA as defined in Section 1681a(f) of the FCRA.[5]  A CRA is, in relevant part, engaged "in the practice of assembling or evaluating" consumer information "*for the purpose of furnishing consumer reports* to third parties."  15 U.S.C. § 1681a(f) (emphasis added).  The definitions of "consumer report" and CRA are thus interrelated and must "be construed together."  *See* Dkt. No. 247 at 7–8; FTC, *40 Years of Experience with the FCRA: An FTC Staff Report with Summary of Interpretations* 20, § 1 (2011), *available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

---

[5] *See* 15 U.S.C. § 1681e(b) ("Whenever a *consumer reporting agency*"); 15 U.S.C. § 1681g(f) ("a *consumer reporting agency* shall"); 15 U.S.C. § 1681i(a)(1)(A) ("All *consumer reporting agencies*"); 15 U.S.C. § 1681i(a)(1)(A) ("in a consumer's file at a *consumer reporting agency*").

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA  92614-2545

-8-

A person is not a CRA if it does not provide "consumer reports" and vice versa. *Id.* Accordingly, because TRE's risk score is not a "consumer report" for the reasons described *supra*, TRE cannot be a CRA. Plaintiffs' SAC, which contains mere legal conclusions to the contrary,[6] does not state a claim for relief. *See* SAC ¶ 251; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring "more than labels and conclusions"). Plaintiffs' FCRA claims must be dismissed.

**3. Because the SAC does not allege Plaintiffs requested their file disclosures or disputed any information with TRE, Plaintiffs' 1681g(f), 1681j and 1681i claims must be dismissed.**

Given Plaintiffs have failed to plead that TRE is a CRA or that TRE provides consumer reports, all of Plaintiffs' FCRA claims should be dismissed. But additional reasons also exist to dismiss Plaintiffs' claims. Three of the four FCRA claims require Plaintiffs to plead they took some form of affirmative action in order to state a claim for relief. Yet their SAC is devoid of any such allegations.

Plaintiffs plead violations of §§ 1681g(f), 1681j and 1681i of the FCRA. *See* SAC ¶¶ 255–57. The former two sections are focused on consumer disclosures; the last focused on reinvestigations of consumer disputes. All have in common at least one requirement – that is, a consumer must contact the CRA to trigger the obligations under each section.[7] *See Darrin v. Bank of Am., N.A.*, No. 2:12-cv-00228, 2013 U.S. Dist. LEXIS 31941, at *22 (E.D. Cal. Mar. 7, 2013) (a prima facie showing under

---

[6] For example, Plaintiffs cite the Consumer Financial Protection Bureau's ("CFPB") "list of consumer reporting companies" in support of their conclusory allegation that TRE is a CRA. SAC ¶ 252 & n. 14. The CFPB's list only states TRE "[m]onitors and reports to merchants retail product return and exchange fraud and abuse." The CFPB's description of TRE makes clear TRE does not provide information for purposes of determining eligibility for an FCRA-enumerated purpose. *See supra* Section III(a)(1). The CFPB list also expressly states it does not "reflect determinations as to whether any particular entity is subject to the Fair Credit Reporting Act." The reference to the CFPB list therefore does not support any plausible allegation that TRE is a CRA under the FCRA.

[7] *See* 15 U.S.C. § 1681g(f)(1) ("*Upon the request of a consumer* for a credit score . . . ."); 15 U.S.C. § 1681j(a)(1)(A) ("All consumer reporting agencies . . . shall make all disclosures . . . *upon request of the consumer* . . . ."); 15 U.S.C. § 1681i(a)(1)(A) ("if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer *and the consumer notifies the agency directly, or indirectly through a reseller* . . . .").

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

§ 1681i requires in relevant part "plaintiff notified the credit reporting agency directly of the inaccurate or incomplete information").

Despite the plain language of the statute, Plaintiffs' SAC contains *no* allegations that Plaintiffs contacted TRE to either request their file disclosure or dispute any information with TRE. To be clear, the SAC alleges the Retail Defendants provided "contact information for TRE," but the SAC does *not* allege that Plaintiffs ever attempted to contact TRE. *See* SAC ¶¶ 52, 65, 77, 89, 101, 113, 125, 137, 150, 163, 176, 189, 202, 214. Plaintiffs' conclusory and vague allegations, reiterating only the elements of a cause of action, do not state a claim for relief. *See* SAC ¶¶ 256–257; *Twombly*, 550 U.S. at 555.

### 4. Section 1681j imposes requirements on only a limited subset of consumer reporting agencies.

Section 1681j applies to two types of consumer reporting agencies only – nationwide CRAs and nationwide specialty CRAs. 15 U.S.C. § 1681j(a)(1)(A). Plaintiffs do not plead that TRE falls into either category. The "consumer reporting agenc[ies] that compile[] and maintain[] files on consumers on a nationwide basis" are Experian, Equifax and TransUnion.[8] "Nationwide specialty consumer reporting agencies" are CRAs "that compile[] and maintain[] files on consumers on a nationwide basis relating to – (1) medical records or payments; (2) residential or tenant history; (3) check writing history; (4) employment history; or (5) insurance claims." 15 U.S.C. § 1681a(x). TRE is not one of the "Big Three" national consumer reporting agencies; nor do Plaintiffs allege TRE compiles and maintains the types of records that would make TRE a nationwide specialty CRA. *See generally* SAC. In sum, Plaintiffs do not (and cannot) plead TRE is a CRA, let alone either a national CRA or a nationwide specialty CRA. Their § 1681j claim therefore must fail.

---

[8] *See Free Credit Reports*, FTC, https://www.consumer.ftc.gov/articles/0155-free-credit-reports (last visited August 26, 2021); *How do I get a copy of my credit reports*, CONSUMER FINANCIAL PROTECTION BUREAU, https://www.consumerfinance.gov/askcfpb/5/how-do-i-get-my-credit-reports.html (August 26, 2021).

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

### B.    Plaintiffs Fail to State a Claim for Invasion of Privacy (Claim I)

Plaintiffs allege TRE violated their right to privacy under the "common law," the California Constitution, Article I, Section 1, and the CCPA[9].  SAC ¶¶ 234–36. Plaintiffs' invasion of privacy claim fails for several reasons.

### 1.    Certain Plaintiffs' invasion of privacy claims are time-barred.

The invasion of privacy claims brought by Plaintiffs Smith, Julian-Moye, and Lloyd under the California Constitution are time-barred.  A one-year statute of limitations applies to claims related to a violation of the California Constitutional right to privacy.  *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1104 (C.D. Cal. 2008). As alleged in the FAC, Plaintiffs Smith, Julian-Moye, and Lloyd attempted their return or exchange over one year before the original complaint was filed on July 7, 2020.  SAC ¶¶ 80, 92, 128.[10]  Thus, they are time-barred from bringing claims of invasion of privacy under the California Constitution.[11]

---

[9] Plaintiffs voluntarily withdrew their CCPA claims in response to TRE's Motion to Dismiss the FAC.  *See* Dkt. No. 247 at 12 –13.  In the SAC, Plaintiffs only allege a CCPA claim against the Retail Defendants, not TRE.  *See* SAC ¶¶ 268–273.  Accordingly, Plaintiffs have no viable cause of action under the CCPA against TRE and thus cannot use the CCPA as a predicate to establish a violation of invasion of privacy against TRE.

[10] While the newly named Plaintiffs' individual claims against TRE were tolled upon the filing of the original class action complaint, their class claims were not.  *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018) ("*American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails.  But *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations.").  Accordingly, any invasion of privacy claims asserted by new Plaintiffs Naidu and White – whose transactions occurred more than a year before the filing of the SAC – on behalf of any putative class are barred by the statute of limitations.

[11] Any argument that the statute of limitations has not yet begun to run under the "continuing violations doctrine" must fail.  *See* Dkt. No. 171 at 23.  "A 'continuing violation' is occasioned by *continual unlawful acts*, not by *continual ill effects from an original violation*." *Lauter*, 642 F. Supp. 2d at 1100 (emphasis added).  Plaintiffs allege they "would not have purchased merchandise from Retail Defendants had they known their [information] was being shared, received and used by Defendants" in the manner described in the SAC.  SAC ¶ 263.  Since Plaintiffs are no longer purchasing merchandise from the Retail Defendants, there can be no "continual unlawful acts."

**2.      Plaintiffs' SAC fails to address the deficiencies in the FAC.**

Plaintiffs' invasion of privacy claim must be dismissed for the same reasons the Court dismissed this claim in the FAC – the SAC still "does not plead what information TRE actually collects."  Dkt. No. 247 at 15.

The SAC continues to be fraught with vagueness, namely with respect to the definitions of "Consumer Commercial Activity Data," "Consumer ID Data" and "identifying and transaction information."  In the FAC, Plaintiffs pled "Consumer Commercial Activity Data" and "Consumer ID Data" "*may* include" certain information regarding the consumers.  *See* FAC ¶ 25.  In its Order granting TRE's Motion to Dismiss the FAC, the Court held "Plaintiffs fail to explain what type of data TRE actually collects, instead averring in general terms" that TRE "may" receive this data.  Dkt. No. 247 at 14.  In the SAC, Plaintiffs strike the word "may" from the definitions of "Consumer Commercial Activity Data" and "Consumer ID Data."  SAC ¶¶ 25, 26.  Yet Plaintiffs still fail to specifically allege what "Consumer Commercial Activity Data" and "Consumer ID Data" TRE actually collected about each Plaintiff (if any).  For example, "Consumer ID Data" is defined to "include[], but is not limited to, all unique identification information contained on or within a consumer's driver's license, government-issued ID card, or passport, e.g., the consumer's name, date of birth, race, sex, photograph, complete street address, and zip code."  SAC ¶ 26.  But only certain of the named Plaintiffs allege they provided their driver's license to a Retail Defendant and *none* allege that they provided another "government-issued ID card" or "passport."  *See* SAC ¶¶ 41–215.  The Retail Defendants therefore could not have transmitted any information regarding the Plaintiffs' race, for example, to TRE because race is not identified on a driver's license.  As a result, "the question of what data TRE has actually collected" remains unanswered in the SAC.  Dkt. No. 247 at 15.

The same is true with respect to Plaintiffs' "identifying and transaction information" the Retail Defendants allegedly transmitted to TRE.  Certain Plaintiffs

-12-

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

allege they provided their "VIP account information," driver's license, credit card, phone number or email address to the Retail Defendant's sales associate at the point of return. *See supra* Section II(A). Other named Plaintiffs – specifically, Plaintiffs Julian-Moye, Naidu, and Chapa – do not allege what (if any) information they provided to the sales associate. *Id*. But for all of the named Plaintiffs, the SAC alleges the Retail Defendants then transmitted "identifying and transaction information to TRE." *Id*. Again, the SAC is "silent regarding what '[identifying and] transaction information' means." Dkt. No. 247 at 15.

Plaintiffs' references to TRE's filings with the Patent and Trademark Office (PTO) also do not save their claim.[12] As an initial matter, the patents and trademarks are "simply too vague" to state a claim for relief. *See* Dkt. No. 247 at 14. The patents and trademarks again only reference what data "*may*" be collected; not what data "TRE actually collects" or what data TRE collected on Plaintiffs. For example:

1. Plaintiffs allege "TRE collects data 'using a wide variety of data collection technologies' used 'in conjunction with stored data, including data collected from other merchants,' including from Retail Defendants." SAC ¶ 23 & n.10 (quoting *inter alia* U.S. Patent No. 7,455,226 at abstract, at col. 1, line 65 to col. 2, line 13, at col. 19, lines 32-36, at col. 21, lines 39-43). But Plaintiffs notably omit the "may" referenced throughout the quoted patent sections: "the data *may* be collected using a wide variety of data collection technologies," '226 Patent at abstract (emphasis added); "[i]n various embodiments, the data *may* be collected . . . and *may* be used . . .", *id*. at col. 1, lines 48-63 (emphasis added); "data that has been collected by other merchants . . . *may* be shared with the merchant and used as factors in the determination," *id*. at col. 19, lines 32-36 (emphasis added); *see also* col. 21, lines 39-44 (same).

---

[12] These filings are the same filings the Court declined take judicial notice of in response to TRE's motion to dismiss Plaintiffs' First Amended Complaint. *See* Dkt. No. 247 at 18.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

2. Plaintiffs also allege "TRE uses not just data related to that consumer but also 'transaction data collected at points of return from other customers thought to be related to this customer by home address, family name, or other connecting data.'"  SAC ¶ 29 & n. 11 (quoting '226 patent at col. 13, lines 64-66).  But, again, Plaintiffs omit that the "transaction data" is only an example of the types of data that "*may*" be used.  '226 patent at col. 13, lines 57-58.

3. The same is true for Plaintiffs' allegation that "TRE considers 'information about other customers in the merchant location during the time of the requested return transaction.'"  SAC ¶ 30 & n. 12 (quoting '226 patent at col. 17, lines 54-56).  The patent states: "[o]ther factors associated with the current return transaction *may* include information about other customers . . ." '226 patent at col. 17, lines 49-50 (emphasis added).[13]

As this Court previously found, such allegations regarding what data TRE "may" receive fails to state a claim for violation of privacy.  Dkt. No. 247 at 15.

Relatedly, Plaintiffs misunderstand what rights are granted to a patentee when a patent is issued.  A claim in a patent does not prove how a product actually operates in the market.  Plaintiffs fail to comprehend that the purpose of a patent is to give the patentee the right to exclude all others from creating anything that is covered by the claims in the patent.  *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991) ("It is elementary that a patent grants only the right to *exclude others* and confers no right on its holder to make, use, or sell.").  The patent system does not require a patentee to make a product in order to receive or enforce a patent.  *See Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1547 (Fed. Cir. 1995) ("A patent is granted in exchange for a patentee's disclosure of an

---

[13] Plaintiffs also attach to their SAC Trademark Reg. No. 3,974,856.  *See* SAC, Ex. E.  But as noted in TRE's Opposition to Plaintiffs' Request for Judicial Notice (Dkt. No. 202), TRE has filed a Section 7 Request Form with the United States Patent and Trademark Office to correct its trademark registration to remove the disputed content as it was included as a good faith error.  Thus, the Court must decline any reliance on the statements in this trademark to support Plaintiffs' claims.

invention, not for the patentee's use of the invention. There is no requirement in this country that a patentee make, use, or sell its patented invention."). Accordingly, Plaintiffs' citations to TRE's patents do nothing to support any allegation of fact as to how the product operated in fact or as to any specific Plaintiff.

Plaintiffs also ignore an additional pillar of patent law – a specification can, and in this case does, describe multiple inventions or embodiments of an invention. *See ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d. 1336, 1341 (Fed. Cir. 2016). For example, while Plaintiffs point to certain sentences describing an embodiment of the disclosure relating to multiple merchants, they gloss over embodiments where all elements of the system are tied to single merchant. *See, e.g.,* '226 Patent col. 8, line 55 through col. 9, line 3. Plaintiffs wrongly extrapolate from soundbites they found in TRE's various patents to reach their faulty allegations about how TRE's return authorization service actually works. TRE's patents cover numerous embodiments that TRE is not even required to practice. Accordingly, any reliance on these patents or trademark are insufficient to support Plaintiffs' claimed factual allegations in the SAC.

### 3. Plaintiffs do not plead sufficient facts to allege an invasion of privacy claim.

Even if Plaintiffs had addressed their prior deficiencies, their invasion of privacy claim must still be dismissed for failure to state a claim for relief. "'To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]' and (2) the intrusion 'occur[red] in a manner highly offensive to a reasonable person.'" Dkt. No. 247 at 13 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020)). Similarly, to establish a claim for invasion of privacy under the California Constitution, "Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and

(3) the intrusion is 'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'"  *Id.*  Plaintiffs fail to allege facts supporting these elements of their purported claim.

### a. TRE did not disseminate or misuse Plaintiffs' information.

California law recognizes two classes of legally protected privacy interests: "(1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')."  *In re Google Location History Litig.*, 428 F. Supp. 3d 185, 196–97 (N.D. Cal. 2019) (citation and internal quotation marks omitted).  Although TRE raised the question in its Motion to Dismiss Plaintiffs' FAC, Plaintiffs still do not state in their SAC whether they are asserting a claim for informational privacy or autonomy privacy.  But their allegations can only be construed as asserting an informational privacy interest.

The informational privacy interest precludes the "dissemination" or "misuse" of sensitive and confidential information.  *Id.*  Here, Plaintiffs allege they "reasonably expected that their Consumer Commercial Activity Data and Consumer ID Data would not be collected, used, sold, and/or disclosed by Defendants without appropriate notice and/or disclosures."  SAC ¶ 231.  TRE, however, does not disseminate Plaintiffs' Consumer Commercial Activity Data or Consumer ID Data or any other "identifying and transaction information" the Retail Defendants may have provided to TRE.  At most, the TRE software application "returns" that information to the Retailer Defendant that inputted the data into the TRE application in the first place.  Because the TRE software does not comingle information provided by retailers, Plaintiffs' information was not disseminated by TRE.  *See* FAQs, "Does

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

-16-

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

the TRE Return Authorization system share consumer data among retailers?" (stating that the system does not share consumer data among retailers).[14]

Furthermore, Plaintiffs fail to allege any "misuse" of information as to TRE. Again, as a service provider, retailers licensed the use of TRE's software to input certain types of consumer information to apply that customer's unique return criteria to enable its employees to decide whether to accept a return or exchange. *Id*. Thus, any information inputted into the TRE software application is authorized by the specific Retailer Defendant providing the information.

### b.   Plaintiffs do not have a reasonable expectation of privacy with respect to TRE.

In order for Plaintiffs' invasion of privacy claim to be actionable, Plaintiffs' expectation of privacy must be reasonable, a determination of which "rests on an examination of 'customs, practices, and physical settings surrounding particular activities,' as well as the opportunity to be notified in advance and consent to the intrusion." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287–88 (2009). "The plaintiff in an invasion of privacy action must have conducted himself or herself in a manner consistent with an actual expectation of privacy, *i.e.*, he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *In re Yahoo! Mail Litig.*, 7 F. Supp. 3d 1016, 1037–38 (N.D. Cal. 2014).

As set forth above, TRE does not have any direct relationship with Plaintiffs nor ever communicated with Plaintiffs. *See e.g.*, SAC ¶¶ 41–215. Rather, each Retail Defendant hires TRE to license the Return Authorization software. *See* FAQs, "What is TRE Return Authorization" (explaining that TRE is hired by retailers to help prevent problems with return fraud or return policy abuse). The Retail Defendant, in turn, may have a direct relationship with each Plaintiff alleging to have voluntarily made a purchase directly from that Retail Defendant. *See, e.g., Heldt v. Guardian*

---

[14] For the same reasons as described *supra*, any allegations relating to TRE's patents and trademark Plaintiffs may cite in support of their argument that TRE "disseminated" or "misused" Plaintiffs' information must also be disregarded.

*Life Ins. Co. of Am.*, No. 16-cv-885, 2019 U.S. Dist. LEXIS 25315, at *18 (S.D. Cal. Feb. 15, 2019) (finding plaintiff had no reasonable expectation of privacy including because plaintiff voluntarily shared the information with third parties). Plaintiffs allege no facts as to why or how they had a reasonable expectation of privacy with respect to the personal information that TRE's software processes on behalf of each Retailer Defendant as the SAC is devoid of any representation made by TRE to them. *Cf. In re Facebook, Inc.*, 956 F.3d at 602 (finding that the plaintiffs plausibly allege "that Facebook set an expectation that logged-out user data would not be collected" based on Facebook's privacy disclosures and policies).

The SAC also alleges TRE's technology is used "'to detect fraudulent and abusive behavior when returns are processed at retailers' return counters.'" SAC ¶ 19. Preventing fraud is a common retailer priority and acceptable societal norm. *See, e.g., Apple Inc. v. Superior Court*, 56 Cal. 4th 128, 140 (2013) ("[W]hile the Legislature indeed sought to protect consumer privacy, it did not intend to so at the cost of creating an undue risk of credit card fraud."); *TJX Cos., Inc. v. Superior Court*, 163 Cal. App. 4th 80, 89 (2008) ("there are substantial opportunities for fraud" with merchandise returns). Plaintiffs do not allege that analyzing "Consumer Commercial Activity Data" or "Consumer ID Data" or any other "identifying and transaction information" to prevent fraud violates any community norms.

In the absence of any factual allegations to support this claim, Plaintiffs' invasion of privacy claim should be dismissed. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038 (concluding that if Plaintiffs' allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law.") (citation and internal quotation marks omitted).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE RETAIL EQUATION, INC.'S RULE 12(B)(6) MOTION TO DISMISS

Troutman Pepper Hamilton Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

 **c.** **TRE's conduct does not constitute a serious invasion of privacy.**

Finally, an actionable invasion of privacy must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *In re Yahoo! Mail Litig.*, 7 F. Supp. 3d at 1038 (citation and internal quotation marks omitted). Plaintiffs allege no facts supporting a conclusion that TRE's conduct resulted in the requisite "egregious" invasion of privacy.

"The California Constitution and the common law both set a high bar for an invasion of privacy claim. Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Belluomini v. Citigroup, Inc.*, No. 13-01743, 2013 U.S. Dist. LEXIS 103882, at *20–21 (N.D. Cal. July 23, 2013); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same). Courts routinely find the collection of information like the "Consumer Commercial Activity Data" and "Consumer ID Data" at issue here does not amount to a serious invasion of a protected privacy interest. *See, e.g., In re iPhone*, 844 F. Supp. 2d at 1050, 1063 (disclosure of "personal data," including addresses, gender, age, zip code, and "geolocation information" "does not constitute an egregious breach of social norms"); *Rasmusson v. Chisago Cnty.*, 991 F. Supp. 2d 1065, 1075–76 (D. Minn. 2014) ("an individual does not have a legitimate expectation of privacy" in driver's license information"; "individuals show their driver's licenses to strangers on a daily basis") (citing cases); *Belluomini*, 2013 U.S. Dist. LEXIS 103882, at *22–23 ("[I]t certainly cannot be the case that disclosure of contact information constitutes an 'egregious breach.'"). Plaintiffs have only parroted the elements of an invasion of privacy claim, with no supporting facts – their claim should be dismissed.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**C.**     **Plaintiffs Fail to State a Claim for Violation of California's Unfair Competition Law (Claim II)**

     **1.**      **Plaintiffs lack standing to assert a UCL claim.**

Plaintiffs' UCL claim must be dismissed because Plaintiffs fail to allege a cognizable injury. To assert a UCL claim, Plaintiffs need to have "suffered injury in fact and . . . lost money or property as a result of the unfair competition." *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (citation and internal quotation marks omitted). Mere conclusory allegations of lost money or property and causation are not enough. *See Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of Cal.*, No. 15-0736, 2018 U.S. Dist. LEXIS 231098, at *40–54 (C.D. Cal. May 1, 2018). Rather, a plaintiff must plead specific facts plausibly showing a causal link between conduct and harm. *See In re iPhone Application Litig.*, No. 11-MD-02250, 2011 U.S. Dist. LEXIS 106865, at *22 (N.D. Cal. Sept. 20, 2011) (no causation where plaintiffs failed to "provide specific allegations with respect to the causal connection between the exact harm alleged (whatever it is) and each Defendant's conduct or role in that harm").

Here, Plaintiffs' UCL claim rests entirely on the alleged receipt and use of "the Consumer Commercial Activity Data and Consumer ID Data Retail Defendants collected from Plaintiffs and Class Members" without their knowledge and consent. *See* SAC ¶¶ 242–45. Based on this conduct, Plaintiffs allege in a conclusory fashion their "privacy rights [were] violated and [they] lost money and property." *Id*. at ¶ 246. However, numerous courts have held a plaintiff's "personal information" does not constitute money or property under the UCL. *See, e.g., In re Facebook Privacy Litigation*, 791 F. Supp. 2d 705, 714, 715 n.10 (N.D. Cal. 2011); *Thompson v. Home Depot*, Inc., No. 07cv1058, 2007 U.S. Dist. LEXIS 68918, at *7–9 (S.D. Cal. Sept.18, 2007).

To the extent Plaintiffs seek to rely on their new allegations that they "expected to receive . . . store credit in exchange for the return" to establish standing, such

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

allegations are also insufficient.  The allegations in the SAC still belie Plaintiffs' single conclusory allegation that they "lost money or property."  For instance, the SAC alleges each Plaintiff was attempting to return *or exchange* the merchandise previously purchased.  SAC ¶¶ 42, 55, 68, 80, 92, 104, 116, 128, 140, 153, 166, 179, 192, 205.   If Plaintiffs had exchanged the merchandise, they may have been exchanging for a product of equal or greater value.  In that scenario, Plaintiffs would not have received any store credit; they may have actually been required to pay more for the new merchandise.  The SAC does not allege any of the Plaintiffs would have actually received store credit nor does California law require retailers to permit refunds and exchanges.  *See* Cal. Civ. Code § 1723.  Even assuming *arguendo* Plaintiffs' returns were denied, Plaintiffs still did not lose any money or property. Plaintiffs still had the property in their possession.  They were only possibly denied the opportunity to *convert* the property back into money.

Plaintiff Lloyd's experience exemplifies these issues.  Plaintiff Lloyd alleges that his "return or exchange was flagged as potentially fraudulent and that *future* attempts by Plaintiff Lloyd to return or exchange merchandise without a receipt would be declined[.]"  SAC ¶ 136 (emphasis added).  Plaintiff Lloyd does not allege that the return or exchange identified in the Complaint was denied.  In other words, Plaintiff Lloyd certainly did not lose "money or property" based on TRE's alleged conduct.  In sum, Plaintiffs' "store credit" allegations do not plausibly give rise to standing under the UCL.

Additionally, Plaintiffs' allegations are based on conduct by the various Retail Defendants – not TRE.  Plaintiffs and TRE had no business dealings related to the transactions at issue.  It is a complete mystery how Plaintiffs "lost money or property" because a retailer used the TRE software.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 321 (2011).  Thus, Plaintiffs have failed to allege the requisite causal connection between the conduct they attribute to TRE and whatever lost money or property they allege.  *See In re iPhone Litig.*, 2011 U.S. Dist. LEXIS 106865, at *22;

*Rooney v. Sierra Pac. Windows*, No. 10-cv-00905, 2011 U.S. Dist. LEXIS 117294, at *27 (N.D. Cal. Oct. 11, 2011) (granting motion to dismiss where plaintiff "failed to allege any 'causal connection'" between the alleged violation and the alleged injury). As a result, Plaintiffs' UCL claims should be dismissed.

### 2. Plaintiffs' UCL claim fails because the predicate claims it relies upon also fail.

Plaintiffs' UCL claim against TRE rests only on the alleged violations of the common law invasion of privacy, Constitutional invasion of privacy, the CCPA (which has now been dismissed), and the FCRA. SAC ¶ 244. As explained above, these predicate claims fail. Thus, Plaintiffs' UCL claim also fails. *See* Dkt. No. 247 at 18; *see also Brown v. HomeStreet Bank*, No. 18-2379, 2019 U.S. Dist. LEXIS 220115, at *12 (C.D. Cal. Sept. 10, 2019) ("To the extent Plaintiff's UCL claim is derivative of her other claims, it likewise fails.").[15]

### D. Plaintiffs Fail to State a Claim for Unjust Enrichment (Claim IV)

"In California, there is no independent claim for unjust enrichment because unjust enrichment 'describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request.'" *Nguyen v. Stephens Inst.*, No. 20-cv-04195, 2021 U.S. Dist. LEXIS 60820, at *13 (N.D. Cal. Mar. 30, 2021) (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). Accordingly, the Court should construe Plaintiffs' unjust enrichment claim "as a quasi-contract claim seeking restitution." *Id.* (internal quotation marks and citation omitted); *see also ESG Cap. Partners, LP v. Stratos*, 828 F. 3d 1023, 1038 (9th Cir. 2016) ("this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract"); *Love & War, LLC v. Wild Bunch A.G.*, No. 18-3773, 2018 U.S. Dist. LEXIS 223158, at *13 (C.D.

---

[15] For the reasons explained in Section IV(B) ("Plaintiffs Fail to Allege an Unlawful Business Practice") and Section IV(C) ("Plaintiffs Fail to Allege an Unfair Business Practice") of the Retail Defendants' Motion to Dismiss (Dkt. No. 279), Plaintiffs' UCL claim must be dismissed because Plaintiffs fail to allege an unlawful or unfair business practice.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Cal. Dec. 21, 2018).   "To prevail on a quasi-contract claim based on an unjust enrichment theory, [Plaintiffs] must allege that [TRE] received a benefit, and it unjustly retained that benefit at [Plaintiffs'] expense."  *Nguyen*, 2021 U.S. Dist. LEXIS 60820, at *15; *see also* Dkt. No. 247 at 18.   Put differently, "[m]erely conferring some benefit to another is insufficient by itself to require the other party to pay restitution."  *Id*.  Plaintiffs' unjust enrichment fails to state a claim for relief.

### 1.   Plaintiffs fail to allege TRE was unjustly conferred a benefit through mistake, fraud, coercion or request.

Plaintiffs base their unjust enrichment claim on the alleged "unlawful[] sharing, receiving, and using [of] Consumer Commercial Activity Data and Consumer ID Data . . . ."  SAC ¶ 262.   Importantly, the SAC is devoid of any allegations that TRE specifically received a benefit from Plaintiffs "through mistake, fraud, coercion, or request."  *Astiana*, 783 F.3d at 762.   Indeed, here there are no allegations TRE ever communicated with any Plaintiff, let alone with the type nefarious intent required to state a claim for unjust enrichment.   Thus, Plaintiffs' claim should be dismissed.  *See, e.g., Vysata v. Menowitz*, No. 18-06157, 2019 U.S. Dist. LEXIS 226702, at *19 (C.D. Cal. July 12, 2019) (dismissing unjust enrichment claim because "[t]here is not an adequate allegation that [plaintiff] obtained a specific benefit through mistake, fraud, coercion, or request").

### 2.   No relationship exists between Plaintiffs and TRE.

"An unjust enrichment theory cannot exist without a prior relationship between the parties."  *Spice Jazz LLC v. Youngevity Int'l, Inc.*, No. 19-cv-583, 2020 U.S. Dist. LEXIS 42364, at *13 (S.D. Cal. Mar. 11, 2020) (citing *Doe I. v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009) (holding that "the connection between Plaintiffs and Wal-Mart here is simply too attenuated to support an unjust enrichment claim")).   Here, Plaintiffs have not alleged any relationship between themselves and TRE.   *See e.g.,* SAC ¶¶ 41–215.   In fact, the SAC does not even contain any allegations that Plaintiffs had any direct contact with TRE.   *See id.*  Because "[t]here

is no prior relationship or contractual relationship between Plaintiff[s] and [TRE] before this lawsuit[,]" Plaintiffs fail to state a claim for unjust enrichment. *Spice Jazz LLC*, 2020 U.S. Dist. LEXIS 42364, at *13.

### 3. Plaintiffs' unjust enrichment claim fails because the predicate claims it relies upon also fail.

As explained above, Plaintiffs remaining claims fail. Plaintiffs' unjust enrichment claim, which is predicated on those claims, fails. Dkt. No. 247 at 18; *Dix v. Nova Benefit Plans, LLC*, No. 14-08678, 2015 U.S. Dist. LEXIS 190409, at *8 (C.D. Cal. Apr. 28, 2015) (dismissing unjust enrichment claim; "cannot stand alone as an independent claim for relief"). [16]

### E.   The SAC Should be Dismissed with Prejudice.

This Court already provided Plaintiffs an opportunity to amend the various deficiencies in their FAC. "The fact that [Plaintiffs] failed to correct these deficiencies in [their] Second Amended Complaint is 'a strong indication that the plaintiffs have no additional facts to plead.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (citation omitted). Because Plaintiffs have attempted to make "their best case" but it is still "wanting," the SAC should be dismissed with prejudice. *Id.*

## IV.   ARBITRATION

TRE reserves its right to join in any motion filed by a Retail Defendant seeking to compel arbitration or, alternatively, to seek a stay (as appropriate) should any such motion to compel arbitration be granted.

## V.   CONCLUSION

For the foregoing reasons, TRE respectfully requests that the Court grant its motion to dismiss Plaintiffs' SAC for failure to state a claim for relief.

---

[16] TRE also incorporates by reference the arguments in Section III ("Plaintiffs' Equitable Claims Fail Because Plaintiffs Have an Adequate Remedy at Law"), Section VI ("Plaintiffs Lack Standing to Seek Injunctive Relief"), and Sections VII(C)–(D) (relating to the out-of-state Plaintiffs' claims) of the Retail Defendants' Motion to Dismiss (Dkt. No. 279), which further support dismissal of Plaintiffs' claims.

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1

2    Dated:  September 20, 2021          TROUTMAN PEPPER HAMILTON
                                         SANDERS LLP
3

4                                        By:  /s/ Ronald I Raether, Jr.
                                              Ronald I. Raether, Jr.
5                                             Cindy D. Hanson
                                              Sadia Mirza
6                                             Oscar A. Figueroa
                                              Attorneys for Defendants
7                                             THE RETAIL EQUATION, INC. &
                                              APPRISS INC.
8

9

10   118741031

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

-25-