Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Theodore Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
Bradley K. King (SBN 274399)
*bking@ahdootwolfson.com*
Christopher Stiner (SBN 276033)
*cstiner@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
310.474.9111 (*telephone*)
310.474.8585 (*facsimile*)

Cornelius P. Dukelow (*pro hac vice*)
Oklahoma Bar No. 19086
**ABINGTON COLE + ELLERY**
320 South Boston Avenue
Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (*telephone & facsimile*)

*Counsel to Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| SHADI HAYDEN, ERIC GILBERT, JACQUELINE SMITH, CAROL JULIAN-MOYE, CHRISTINE ALIRE, JERRY HO, SYLVIA PADRO, SOWBHAGIA NAIDU, ALEXANDRA SOLORZANO, TRACI DUNCAN WHITE, MAYCE AL KURAISHI, and STEPHANIE CHAPA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE RETAIL EQUATION, INC., SEPHORA USA, INC., BED BATH & BEYOND INC., CVS PHARMACY, INC., BATH & BODY WORKS, INC., THE GAP, INC., THE HOME DEPOT, INC., and THE TJX COMPANIES, INC., <br><br> Defendants. | Case No. 8:20-cv-01203-DOC-DFM <br><br> **THIRD AMENDED CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED <br><br><br> Judge: Hon. David O. Carter <br> Ctrm: 10A <br><br> Complaint filed July 7, 2020 |

THIRD AMENDED CLASS ACTION COMPLAINT

Plaintiffs Shadi Hayden, Eric Gilbert, Jacqueline Smith, Carol Julian-Moye, Christine Alire, Jerry Ho, Sylvia Padro, Sowbhagia Naidu, Alexandra Solorzano, Traci Duncan White, Mayce Al Kuraishi, and Stephanie Chapa (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of counsel, and on information and belief as follows:

## BRIEF SUMMARY OF THE CASE

1. Defendant The Retail Equation, Inc., along with its parent company Appriss Inc. (collectively "TRE"), is a technology company in the business of issuing reports on consumers in the form of "risk scores" to retailers contracting for its services. Risk scores are issued at a retailer's request when a consumer attempts a product return or exchange. Before accepting the return and issuing that consumer a store credit, or allowing the consumer to exchange the product, the retailer requests a "risk score" from TRE. TRE's "risk score" purports to be an accurate evaluation of whether the consumer is engaged in retail fraud or other criminal activity. It is not, however, and has resulted in numerous consumers being falsely labeled fraudsters and for their otherwise permissible returns or exchanges to be denied.

2. TRE generates its risk scores through analysis of data it has collected on consumers from both retailers and other sources—specifically, non-anonymized, individual Consumer Commercial Activity Data and Consumer ID Data (as defined below). This consumer data is shared and collected without the consent or knowledge of the consumers.

3. There is no ability of consumers to request their own risk score, to appeal TRE and the retailer's decision to refuse a return or exchange, or to review or correct the data that forms the basis for TRE's risk score. Furthermore, TRE and retailers do not disclose to consumers the factors they consider in determining the risk score, or the minimum risk score a consumer must maintain to ensure their returns and exchanges will be accepted.

4. TRE's clients include: Defendant Sephora USA, Inc., Defendant Bed Bath & Beyond Inc., Defendant CVS Pharmacy, Inc., Defendant Bath & Body Works, Inc.,

THIRD AMENDED CLASS ACTION COMPLAINT

Defendant The Gap, Inc., Defendant The Home Depot, Inc., and Defendant The TJX Companies, Inc. (collectively "Retail Defendants").

5. Plaintiffs and Class members, defined below, were harmed and continue to be harmed by (a) the sharing of their Consumer Commercial Activity Data and Consumer ID Data by Retail Defendants, (b) the receipt of their Consumer Commercial Activity Data and Consumer ID Data by TRE, and (c) the use of their Consumer Commercial Activity Data and Consumer ID Data by all Defendants. Furthermore, as a result of the practices described above and herein, Retail Defendants have denied and continue to deny valid returns and exchanges.

6. This is a class action against Defendants for invasion of privacy and violations of California's Unfair Competition Law.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this matter, including Plaintiffs' claims under state law, under 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000 (exclusive of interests and costs), because in the aggregate the proposed nationwide Class is believed to number at least in the hundreds of thousands, and because at least one member of the Class is a citizen of a State different from Defendants.

8. This Court has personal jurisdiction over all Defendants because they are authorized to do business and regularly conduct business in California. Defendant The Retail Equation, Inc. has its headquarters and principal place of business in California, is authorized to do business in California, and regularly conducts business in California. Defendant Sephora USA, Inc. has its headquarters and principal place of business in California, is authorized to do business in California, and regularly conducts business in California. Defendant The Gap, Inc. has its headquarters and principal place of business in California, is authorized to do business in California, and regularly conducts business in California.

THIRD AMENDED CLASS ACTION COMPLAINT

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the headquarters and principal place of business of Defendant The Retail Equation, Inc. is in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District. All Retail Defendants also maintain retail locations in this District and regularly conduct business in this District.

## STATEMENT OF FACTS

### Retail Defendants

10.     Defendant Sephora USA, Inc. is a Delaware corporation with its principal place of business and headquarters in San Francisco, California. Sephora describes itself as "a leader in global prestige retail." Sephora operates approximately 1000 retail locations in the United States; of which approximately 150 are located in California.

11.     Defendant Bed Bath & Beyond Inc. is a New York corporation with its principal place of business and headquarters in Union, New Jersey. Bed Bath & Beyond describes itself as "an omnichannel retailer that makes it easy for our customers to feel at home." Across brands, Bed Bath & Beyond operates approximately 1,500 retail locations in the United States; of which approximately 170 are located in California.

12.     Defendant CVS Pharmacy, Inc. is a Delaware corporation with its principal place of business and headquarters in Woonsocket, Rhode Island. CVS is a Rhode Island corporation and a wholly owned subsidiary of CVS Health Corporation, describing itself as "the nation's premier health innovation company helping people on their path to better health." CVS operates approximately 9,900 retail locations in the United States, of which approximately 1,100 are located in California.

13.     Defendant Bath & Body Works, Inc. is a Delaware corporation with its principal place of business and headquarters in Columbus, Ohio. Bath & Body Works, Inc. describes itself as "an international company that sells personal care and beauty products in more than 1,700 North American stores." Victoria's Secret Stores, LLC is a Delaware limited liability company with its principal place of business and headquarters in Reynoldsburg, Ohio. Victoria's Secret is a subsidiary of Bath & Body Works, Inc.  Bath &

- 3 -

THIRD AMENDED CLASS ACTION COMPLAINT

Body Works, LLC is a Delaware limited liability company with its principal place of business and headquarters in New Albany, Ohio. Bath & Body Works is also a subsidiary of Bath & Body Works, Inc. Across brands, Bath & Body Works, Inc. operates approximately 1,700 retail locations in the United States, of which a large number are located in California.

14.    Defendant The Gap, Inc. is a Delaware corporation with its principal place of business and headquarters in San Francisco, California. Gap describes itself as "a leading global apparel retail company." Athleta LLC is a Delaware limited liability company with its principal place of business and headquarters in San Francisco, California. Athleta is a subsidiary of The Gap, Inc. Across brands, Gap operates approximately 2,700 retail locations in the United States, of which a large number are located in California.

15.    Defendant The Home Depot, Inc. is a Delaware corporation with its principal place of business and headquarters in Atlanta, Georgia. Home Depot describes itself as "the world's largest home improvement retailer." Home Depot operates approximately 2,000 retail locations in the United States; of which approximately 230 are located in California.

16.    Defendant The TJX Companies, Inc. is a Delaware corporation with its principal place of business and headquarters in Farmington, Massachusetts. TJX describes itself as "the leading off-price apparel and home fashions retailer in the United States and worldwide." TJ Maxx and Marshalls together form the Marmaxx division of The TJX Companies, Inc. Across brands, TJX operates approximately 3,100 retail locations in the Unites States; of which approximately 360 are located in California.

### The Retail Equation

17.    Defendant The Retail Equation, Inc. is a Delaware corporation, and wholly owned subsidiary of Appriss Inc., with its principal place of business and headquarters in Irvine, California. The Retail Equation describes itself as "the industry leader in retail transaction optimization solutions at the point of sale and point of return." The Retail Equation's technology "uses statistical modeling and analytics to detect fraudulent and

- 4 -

abusive behavior when returns are processed at retailers' return counters."[1] Appriss, Inc., "provides artificial intelligence-based solutions to help retailers protect margin, unlock sales, and cut shrink."[2] Discussing Appriss's acquisition of The Retail Equation in 2015, Appriss CEO Mike Davis said: "We are excited to partner with The Retail Equation as we strengthen our strategy to combat organized crime and fraud in all industries."[3] Deven Parekh, chairman of the board for Appriss, further stated: "We believe that Appriss and The Retail Equation have unique capabilities that, together, provide a powerful improvement to the shopping experience by identifying and curbing employee dishonesty, consumer fraud and organized crime within retail."[4] Commenting on Appriss's acquisition and merger of Sysrepublic with The Retail Equation 2016, The Retail Equation President Mark Hammond echoed Mr. Parekh's sentiment: "We believe that Appriss, The Retail Equation, and Sysrepublic all bring unique capabilities that, together, provide a powerful improvement to the shopping experience by identifying and curbing employee dishonesty, consumer fraud, and organized crime within retail."[5]

---

[1] THE RETAIL EQUATION, *Frequently Asked Questions*, https://www.theretailequation.com/frequently-asked-questions/ (last visited July 27, 2021).

[2] APPRISS RETAIL, *Overview*, https://apprissretail.com/about/overview/ (last visited July 27, 2021).

[3] *Appriss Acquires The Retail Equation To Strengthen Efforts In Fighting Fraud And Mitigating Risk*, RETAIL SUPPLY CHAIN INSIGHTS (Aug. 19, 2015), https://www.retail supplychaininsights.com/doc/appriss-acquires-retail-equation-strengthen-fighting-fraud-mitigating-risk-0001.

[4] *Id.*

[5] *Appriss Acquires Sysrepublic; Further Enhances Efforts To Fight Retail Fraud, Protect Profits and Mitigate Risk*, LOSS PREVENTION INSIGHTS (Apr. 13, 2016), https://www.losspreventioninsights.com/doc/appriss-acquires-sysrepublic-further-fight-mitigate-risk-0001.

- 5 -

THIRD AMENDED CLASS ACTION COMPLAINT

18.     TRE holds numerous trademarks and patents examples of which are attached here to as Exhibits A through E.[6] TRE's patents make clear, and on that basis Plaintiffs specifically allege on information and belief, that TRE is processing merchandise returns and receiving customer information from Retail Defendants as disclosed in the specification, drawings and claims of TRE's '226 (Ex. A), '229 (Ex. B), '750 (Ex. C), and '839 (Ex. D) patents, and that Retail Defendants are processing merchandise returns and sharing customer information with TRE as disclosed in the specification, drawings and claims of TRE's '226, '229, '750, and '839 patents.

19.     Specifically, TRE's "return authorization system [] uses predictive algorithms and statistical models"[7] that are made possible by the capture of Consumer ID Data at the point-of-return. Matching transaction data to an individual consumer is accomplished through use of the consumer's government-issued identification and through "TRE's Receipt Triangulation"[8] technology. TRE's applications operate in more than 34,000 stores in North America, supporting a diverse retail base of specialty apparel, footwear, hard goods, department, big box, auto parts, drug/pharmacy, grocery, and more.

---

[6] Ex. A (U.S. Patent No. 7,455,226); Ex. B (U.S. Patent No. 8,025,229); Ex. C (U.S. Patent No. 8,356,750); Ex. D (U.S. Patent No. 9,996,839); Ex. E (U.S. Trademark Reg. No. 3,974,856); Ex. F (Combined Declaration of Use and/or Excusable Nonuse/ Application for Renewal of Registration of a Mark under Sections 8 & 9 for U.S. Trademark Reg. No. 3,974,856 filed with the USPTO on June 24, 2020); Ex. G (Notice of Renewal for U.S. Trademark Reg. No. 3,974,856 issued by the USPTO on August 14, 2020).

[7] APPRISS RETAIL, *Verify*, https://apprissretail.com/solutions/verify/ (last visited July 27, 2021).

[8] APPRISS, https://appriss.com/retail/wp-content/uploads/sites/4/2017/02/TRE2026-Quick Overview-Verify-3-customer-service.pdf (last visited July 27, 2021).

- 6 -

THIRD AMENDED CLASS ACTION COMPLAINT

**Defendants' Data Collection, Sharing and Use**

20. TRE provides services to retailers targeted at "identifying and curbing employee dishonesty, consumer fraud and organized crime within retail." [9] In order to accomplish this analysis, TRE collects data "using a wide variety of data collection technologies" used "in conjunction with stored data, including data collected from other merchants," including from Retail Defendants.[10]

21. Without the knowledge or consent of consumers, Retail Defendants are engaged in a continuous process of collecting and sharing with TRE large amounts of data about their consumers. Retail Defendants' data collection efforts are most prevalent at the point of sale and point of return and exchange, but occur more broadly elsewhere, e.g., in interactions through Retail Defendants' website. Consumer data collected by Retail Defendants and shared with TRE falls broadly within two categories: "Consumer Commercial Activity Data" and "Consumer ID Data."

22. As used herein, "Consumer Commercial Activity Data" collected by Retail Defendants and shared with TRE includes, but is not limited to, each customer's unique purchase, return, and exchange history, i.e., what a consumer buys, when a consumer buys, where a consumer buys, how much a consumer buys, how often a consumer buys, what form of payment a consumer uses, etc. The same, or similar, data is also collected for returns and exchanges.

---

[9] *Appriss Acquires Sysrepublic; Further Enhances Efforts To Fight Retail Fraud, Protect Profits and Mitigate Risk*, LOSS PREVENTION INSIGHTS (Apr. 13, 2016), https://www.losspreventioninsights.com/doc/appriss-acquires-sysrepublic-further-fight-mitigate-risk-0001.

[10] Ex. A (U.S. Patent No. 7,455,226) at abstract, at col. 1, line 65 to col. 2, line 13, at col. 19, lines 32-36, at col. 21, lines 39-43, and at claim 1; Ex. C (U.S. Patent No. 8,356,750) at claim 1; Ex. D (U.S. Patent No. 9,996,839) at claim 1; *see also* Ex. E (U.S. Trademark Reg. No. 3,974,856) ("PROVIDING RETURN AUTHORIZATION SERVICES TO RETAILERS . . . BY CHECKING THE DATABASE FOR CONSUMERS' PRIOR RETURN HISTORY WITH MULTIPLE RETAILERS.").

THIRD AMENDED CLASS ACTION COMPLAINT

23. As used herein, "Consumer ID Data" collected by Retail Defendants and shared with TRE includes, but is not limited to, all unique identification information contained on or within a consumer's driver's license, government-issued ID card, or passport, e.g., the consumer's name, date of birth, race, sex, photograph, complete street address, and zip code.

24. The Consumer Commercial Activity Data and Consumer ID Data collected by Retail Defendants and shared with TRE are non-anonymized and individual data sets, as opposed to anonymized and collective data sets. The Consumer Commercial Activity Data and Consumer ID Data collected by Retail Defendants and shared with TRE have not been sanitized and personally identifiable information has not been removed. The Consumer Commercial Activity Data and Consumer ID Data includes personal information, as defined in California Civil Code section 1798.81.5(A)(1)(d).

25. While the collection and use of this information without notice to or consent from consumers is shocking and unlawful in itself, it is only the tip of the iceberg with respect to TRE's and the Retail Defendants' unlawful data practices. TRE's filings with the U.S. Patent and Trademark Office are stunning and reveal data collection efforts that are far wider, deeper, and more intrusive than TRE admits.

26. TRE's filings with the Patent and Trademark Office indicate that, when evaluating the return behavior of a consumer, TRE uses not just data related to that consumer but also "transaction data collected at points of return from other customers thought to be related to this customer by home address, family name, or other connecting data."[11] In other words, TRE factors into its analysis whatever data it has on people thought to be related to the customer by any "connecting data," i.e., individuals found in a customer's social network. Thus, for example, if TRE believes (rightly or wrongly) that one of your Facebook friends is a fraudster, TRE may label you a likely fraudster as well.

---

[11] Ex. A ('226 patent) at col. 13, lines 64-66.

- 8 -

THIRD AMENDED CLASS ACTION COMPLAINT

27. Perhaps even more disturbing is TRE's mind-boggling statement that, in determining whether a return should be rejected, TRE considers "information about other customers in the merchant location during the time of the requested return transaction."[12] Therefore, simply being in the same store as another consumer who TRE suspects of fraud could lead TRE to associate the conduct of an otherwise entirely innocent consumer with that of a suspected criminal.

28. Finally, adding further injury, TRE claims to apply artificial intelligence to all of its collected data, yielding even deeper insights into consumers' private lives.

**Attempted Return or Exchange Process**

29. Every time a consumer purchases goods from Retail Defendants, included in the bargain is the ability to return for store credit or exchange the purchased goods within a specified period of time.

30. When a consumer attempts to make a return or exchange, Retail Defendants swipe or scan the consumer's driver's license, government-issued ID card, or passport and the original sales transaction receipt (if present), thereby identifying the consumer and the consumer's unique purchase, return, and exchange behavior. New Consumer Commercial Activity Data and Consumer ID Data are also generated at this time.

31. Without the consent or knowledge of consumers, Retail Defendants transmit to and share with TRE the Consumer Commercial Activity Data and Consumer ID Data they collect from consumers when consumers attempt to make a return or exchange. This data transfer is in addition to, and subsequent to, prior transfers of Consumer Commercial Activity Data and Consumer ID Data that occur on a continuous basis.

32. TRE then uses this data to identify the consumer, analyzes the data in combination with the other data it has collected on the consumer described above, and then generates a consumer report containing a "risk score" for each consumer attempting to return or exchange merchandise at one of Retail Defendants' stores (or any retailer

---

[12] Ex. A ('226 patent) at col. 17, lines 54-56.

- 9 -

unnamed herein that is using TRE's service). The "risk score" is TRE's assessment of the likelihood the return or exchange consumer is committing fraud, or other organized crime within retail. Then, using the consumer's "risk score" as a pretext, TRE notifies the Retail Defendant that the attempted returns or exchanges should be denied as a consequence of suspected "fraudulent and abusive" behavior by the consumer, implicitly labeling the consumer a fraudster. "Risk scores" identifying consumers as fraudsters occur even when the return or exchange is valid and there is no criminal, or even improper, conduct by a consumer.

33. It is hard to imagine a more invasive collection and pernicious use of information in a "normal" retail setting. Yet, there is no advance notice to consumers of TRE's involvement in retail transactions; consumers are entirely unaware that they are submitting to this surreptitious process of judgment based on TRE's analysis of all the information that its massive data mining effort has yielded. And, when TRE determines that the retailer should reject an attempted return, TRE makes no effort to verify with the customer the actual circumstances of the return or the accuracy of the data on which the rejection is based.

34. TRE's covert use of personal data to render judgment on the fitness of a consumer to execute a simple return or exchange of merchandise violates a basic assumption of the retail marketplace. One of the reasons that consumers are drawn to large national retailers is the ease of return and exchange: if a consumer buys a shirt for their spouse, they feel secure that they can return or exchange that gift if it doesn't fit or is the wrong color. Consumers do not expect that the retailer will decide whether to allow a return or exchange based on a "risk score" created by a third-party "big data" aggregator based on information like the consumer's personal data and shopping history, let alone information about other individuals "thought to be related" to the consumer or "other customers in the merchant location" at the time of the return.

35. Because of the widespread adoption of TRE's service—as evidenced by the number and size of retailers named herein—TRE's labeling of a consumer as a "likely

- 10 -

THIRD AMENDED CLASS ACTION COMPLAINT

fraudster" acts as the equivalent of a "scarlet letter" for merchandise returns, for which there is no appeal process and no forewarning. This danger is not hypothetical. Each Retail Defendant refused a valid return or exchange based on TRE's scarlet letter concerning one of the Plaintiffs. There was no appeal process, no human to whom Plaintiff could explain the return, nor any advance notice that a "risk score" declaring them a fraudster would be generated.

36.    Thus, a consumer branded by TRE as a high fraud risk has no idea which other retailers—Retail Defendants and others—might reject future merchandise returns based on TRE's incorrect evaluation. The consumer must now live with the fear that any attempted return may be rejected, causing not only the economic harm of forcing the consumer to retain unwanted goods, but also subjecting the consumer to substantial inconvenience as well as the embarrassment of being identified as a criminal and a fraud risk.

37.    Plaintiffs are not the only ones concerned by this behavior. The District Attorneys of the Counties of Alameda, Riverside, and Santa Barbara together filed a complaint in December 2020 against another TRE client, Best Buy, for, among other things, "[f]ailing to disclose in its posted return policy the existence of a third-party, The Retail Equation, that monitored the sale and return, refund or exchange activity of California consumers, and who was authorized by Defendant to deny a return, refund or exchange, in violation of Civil Code section 1723(a)."[13]

### Plaintiff Hayden

38.    Plaintiff Shadi Hayden is an individual residing in Campbell, California.

39.    On or about July 9, 2019, Plaintiff Hayden attempted to return or exchange merchandise previously purchased from Sephora. Plaintiff Hayden expected to receive, at a minimum, store credit in exchange for the return.

---

[13] Complaint filed in *State of California v. Best Buy Stores, L.P.,* No. CVRI2000477 (Cal. Super. Ct. Dec. 9, 2020), at ¶ 11.D; *see also id*. ¶ 7.

THIRD AMENDED CLASS ACTION COMPLAINT

40. Plaintiff Hayden provided her Sephora Rouge VIP account information at the Sephora sales associate's request. Sephora's sales associate entered Plaintiff Hayden's identifying and transaction information into Sephora's computer system.

41. Sephora's sales associate entered Plaintiff Hayden's identifying and transaction information into Sephora's computer system.

42. Sephora transmitted Plaintiff Hayden's identifying and transaction information to TRE. This new identifying and transaction information is in addition to the other Consumer ID Data and Commercial Activity Data already transmitted to TRE, or otherwise collected by TRE, as alleged above.

43. Sephora's sales associate did not notify Plaintiff Hayden that her identifying and transaction information was being transmitted to TRE.

44. Plaintiff Hayden did not know her identifying and transaction information was being transmitted to TRE.

45. Sephora's sales associate did not notify Plaintiff Hayden that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

46. Plaintiff Hayden did not know that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

47. After Sephora entered Plaintiff Hayden's identifying and transaction information into its computer system, and transmitted that information to TRE, TRE communicated to Sephora's sales associate that the attempted return or exchange was to be declined.

48. After entering Plaintiff Hayden's identifying and transaction information into Sephora's computer system and receiving the communication from TRE, Sephora's sales

- 12 -

THIRD AMENDED CLASS ACTION COMPLAINT

associate communicated to Plaintiff Hayden that the return or exchange was declined based upon the recommendation of TRE.

49.     Sephora's sales associate presented Plaintiff Hayden a printout stating the return or exchange was declined and providing contact information for TRE.

50.     Plaintiff Hayden was thereby prevented from completing the return or exchange.

**Plaintiff Gilbert**

51.     Plaintiff Eric Gilbert is an individual residing in Boca Raton, Florida.

52.     On or about March 7, 2020, Plaintiff Gilbert attempted to return or exchange merchandise previously purchased from CVS. Plaintiff Gilbert expected to receive, at a minimum, store credit in exchange for the return.

53.     Plaintiff Gilbert provided his driver's license at the CVS sales associate's request. The CVS sales associate scanned, swiped, and/or entered Plaintiff Gilbert's identifying and transaction information into CVS's computer system.

54.     CVS transmitted Plaintiff Gilbert's identifying and transaction information to TRE. This new identifying and transaction information is in addition to the other Consumer ID Data and Commercial Activity Data already transmitted to TRE, or otherwise collected by TRE, as alleged above.

55.     CVS's sales associate did not notify Plaintiff Gilbert that his identifying and transaction information was being transmitted to TRE.

56.     Plaintiff Gilbert did not know his identifying and transaction information was being transmitted to TRE.

57.     CVS's sales associate did not notify Plaintiff Gilbert that his identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for him from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

58.     Plaintiff Gilbert did not know that his identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for him from which

- 13 -

THIRD AMENDED CLASS ACTION COMPLAINT

TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

59. After CVS entered Plaintiff Gilbert's identifying and transaction information into its computer system, and transmitted that information to TRE, TRE communicated to CVS's sales associate that the attempted return or exchange was to be declined.

60. After entering Plaintiff Gilbert's identifying and transaction information into CVS's computer system and receiving the communication from TRE, CVS's sales associate communicated to Plaintiff Gilbert that the return or exchange was declined based upon the recommendation of TRE.

61. CVS's sales associate presented Plaintiff Gilbert a printout stating the return or exchange was declined and providing contact information for TRE.

62. Plaintiff Gilbert was thereby prevented from completing the return or exchange.

**Plaintiff Smith**

63. Plaintiff Jacqueline Smith is an individual residing in Santa Ana, California.

64. On or about July 20, 2018, Plaintiff Smith attempted to return or exchange merchandise previously purchased from Bath & Body Works's Victoria's Secret retail location. Plaintiff Smith expected to receive, at a minimum, store credit in exchange for the return.

65. Plaintiff Smith provided her driver's license and email address at the Bath & Body Works (Victoria's Secret) sales associate's request. The Bath & Body Works (Victoria's Secret) sales associate scanned, swiped, and/or entered Plaintiff Smith's identifying and transaction information into the Bath & Body Works computer system.

66. Bath & Body Works transmitted Plaintiff Smith's identifying and transaction information to TRE. This new identifying and transaction information is in addition to the other Consumer ID Data and Commercial Activity Data already transmitted to TRE, or otherwise collected by TRE, as alleged above.

- 14 -

THIRD AMENDED CLASS ACTION COMPLAINT

67.    The Bath & Body Works (Victoria's Secret) sales associate did not notify Plaintiff Smith that her identifying and transaction information was being transmitted to TRE.

68.    Plaintiff Smith did not know her identifying and transaction information was being transmitted to TRE.

69.    The Bath & Body Works (Victoria's Secret) sales associate did not notify Plaintiff Smith that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

70.    Plaintiff Smith did not know that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

71.    After Bath & Body Works entered Plaintiff Smith's identifying and transaction information into its computer system, and transmitted that information to TRE, TRE communicated to the Bath & Body Works (Victoria's Secret) sales associate that the attempted return or exchange was to be declined.

72.    After entering Plaintiff Smith's identifying and transaction information into the Bath & Body Works computer system and receiving the communication from TRE, the Bath & Body Works (Victoria's Secret) sales associate communicated to Plaintiff Smith that the return or exchange was declined based upon the recommendation of TRE.

73.    The Bath & Body Works (Victoria's Secret) sales associate presented Plaintiff Smith a printout stating the return or exchange was declined and providing contact information for TRE.

74.    Plaintiff Smith was thereby prevented from completing the return or exchange.

- 15 -

THIRD AMENDED CLASS ACTION COMPLAINT

**Plaintiff Julian-Moye**

75.     Plaintiff Carol Julian-Moye is an individual residing in Greer, South Carolina.

76.     On or about January 2, 2019, Plaintiff Julian-Moye attempted to return or exchange merchandise previously purchased from Stein Mart. Plaintiff Julian-Moye expected to receive, at a minimum, store credit in exchange for the return.

77.     Stein Mart's sales associate entered Plaintiff Julian-Moye's identifying and transaction information into Stein Mart's computer system.

78.     Stein Mart transmitted Plaintiff Julian-Moye's identifying and transaction information to TRE. This new identifying and transaction information is in addition to the other Consumer ID Data and Commercial Activity Data already transmitted to TRE, or otherwise collected by TRE, as alleged above.

79.     Stein Mart's sales associate did not notify Plaintiff Julian-Moye that her identifying and transaction information was being transmitted to TRE.

80.     Plaintiff Julian-Moye did not know her identifying and transaction information was being transmitted to TRE.

81.     Stein Mart's sales associate did not notify Plaintiff Julian-Moye that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

82.     Plaintiff Julian-Moye did not know that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

83.     After Stein Mart entered Plaintiff Julian-Moye's identifying and transaction information into its computer system, and transmitted that information to TRE, TRE communicated to Stein Mart's sales associate that the attempted return or exchange was to be declined.

- 16 -

THIRD AMENDED CLASS ACTION COMPLAINT

84.     After entering Plaintiff Julian-Moye's identifying and transaction information into Stein Mart's computer system and receiving the communication from TRE, Stein Mart's sales associate communicated to Plaintiff Julian-Moye that the return or exchange was declined based upon the recommendation of TRE.

85.     Stein Mart's sales associate presented Plaintiff Julian-Moye a printout stating the return or exchange was declined and providing contact information for TRE.

86.     Plaintiff Julian-Moye was thereby prevented from completing the return or exchange.

### Plaintiff Alire

87.     Plaintiff Christine Alire is an individual residing in Sacramento, California.

88.     On or about January 8, 2020, Plaintiff Alire attempted to return or exchange merchandise previously purchased from Athleta. Plaintiff Alire expected to receive, at a minimum, store credit in exchange for the return.

89.     Plaintiff Alire provided her driver's license, credit card, phone number, and email address at the Athleta sales associate's request. Athleta's sales associate scanned, swiped, and/or entered Plaintiff Alire's identifying and transaction information into Athleta's computer system.

90.     Athleta transmitted Plaintiff Alire's identifying and transaction information to TRE. This new identifying and transaction information is in addition to the other Consumer ID Data and Commercial Activity Data already transmitted to TRE, or otherwise collected by TRE, as alleged above.

91.     Athleta's sales associate did not notify Plaintiff Alire that her identifying and transaction information was being transmitted to TRE.

92.     Plaintiff Alire did not know her identifying and transaction information was being transmitted to TRE.

93.     Athleta's sales associate did not notify Plaintiff Alire that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk

- 17 -
THIRD AMENDED CLASS ACTION COMPLAINT

score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

94.    Plaintiff Alire did not know that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

95.    After Athleta entered Plaintiff Alire's identifying and transaction information into its computer system, and transmitted that information to TRE, TRE communicated to Athleta's sales associate that the attempted return or exchange was to be declined.

96.    After entering Plaintiff Alire's identifying and transaction information into Athleta's computer system and receiving the communication from TRE, Athleta's sales associate communicated to Plaintiff Alire that the return or exchange was declined based upon the recommendation of TRE.

97.    Athleta's sales associate presented Plaintiff Alire a printout stating the return or exchange was declined and providing contact information for TRE.

98.    Plaintiff Alire was thereby prevented from completing the return or exchange.

**Plaintiff Ho**

99.    Plaintiff Jerry Ho is an individual residing in Alameda, California.

100.    On or about May 28, 2020, Plaintiff Ho attempted to return or exchange merchandise previously purchased from Home Depot. Plaintiff Ho expected to receive, at a minimum, store credit in exchange for the return.

101.    Plaintiff Ho provided his driver's license at the Home Depot sales associate's request. Home Depot's sales associate scanned, swiped, and/or entered Plaintiff Ho's identifying and transaction information into Home Depot's computer system.

102.    Home Depot transmitted Plaintiff Ho's identifying and transaction information to TRE. This new identifying and transaction information is in addition to the other Consumer ID Data and Commercial Activity Data already transmitted to TRE, or otherwise collected by TRE, as alleged above.

- 18 -

THIRD AMENDED CLASS ACTION COMPLAINT

103. Home Depot's sales associate did not notify Plaintiff Ho that his identifying and transaction information was being transmitted to TRE.

104. Plaintiff Ho did not know his identifying and transaction information was being transmitted to TRE.

105. Home Depot's sales associate did not notify Plaintiff Ho that his identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for him from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

106. Plaintiff Ho did not know that his identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for him from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

107. After Home Depot entered Plaintiff Ho's identifying and transaction information into its computer system, and transmitted that information to TRE, TRE communicated to Home Depot's sales associate that the attempted return or exchange was to be declined.

108. After entering Plaintiff Ho's identifying and transaction information into Home Depot's computer system and receiving the communication from TRE, Home Depot's sales associate communicated to Plaintiff Ho that the return or exchange was declined based upon the recommendation of TRE.

109. Home Depot's sales associate presented Plaintiff Ho a printout stating the return or exchange was declined and providing contact information for TRE.

110. Plaintiff Ho was thereby prevented from completing the return or exchange.

**Plaintiff Padro**

111. Plaintiff Sylvia Padro is an individual residing in Chula Vista, California.

112. On or about October 10, 2020, Plaintiff Padro attempted to return or exchange merchandise previously purchased from Sephora. Plaintiff Padro expected to receive, at a minimum, store credit in exchange for the return.

- 19 -

THIRD AMENDED CLASS ACTION COMPLAINT

113.  Plaintiff Padro provided her driver's license, credit card and email address at the Sephora sales associate's request. Sephora's sales associate entered Plaintiff Padro's identifying and transaction information into Sephora's computer system.

114.  Sephora's sales associate entered Plaintiff Padro's identifying and transaction information into Sephora's computer system.

115.  Sephora transmitted Plaintiff Padro's identifying and transaction information to TRE. This new identifying and transaction information is in addition to the other Consumer ID Data and Commercial Activity Data already transmitted to TRE, or otherwise collected by TRE, as alleged above.

116.  Sephora's sales associate did not notify Plaintiff Padro that her identifying and transaction information was being transmitted to TRE.

117.  Plaintiff Padro did not know her identifying and transaction information was being transmitted to TRE.

118.  Sephora's sales associate did not notify Plaintiff Padro that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

119.  Plaintiff Padro did not know that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

120.  After Sephora entered Plaintiff Padro's identifying and transaction information into its computer system, and transmitted that information to TRE, TRE communicated to Sephora's sales associate that the attempted return or exchange was to be declined.

121.  After entering Plaintiff Padro's identifying and transaction information into Sephora's computer system and receiving the communication from TRE, Sephora's sales

THIRD AMENDED CLASS ACTION COMPLAINT

associate communicated to Plaintiff Padro that the return or exchange was declined based upon the recommendation of TRE.

122. Sephora's sales associate presented Plaintiff Padro a printout stating the return or exchange was declined and providing contact information for TRE.

123. Plaintiff Padro was thereby prevented from completing the return or exchange.

### Plaintiff Naidu

124. Plaintiff Sowbhagia Naidu is an individual residing in Sacramento, California.

125. On or about October 10, 2019, Plaintiff Naidu attempted to return or exchange merchandise previously purchased from Sephora. Plaintiff Naidu expected to receive, at a minimum, store credit in exchange for the return.

126. Sephora's sales associate entered Plaintiff Naidu's identifying and transaction information into Sephora's computer system.

127. Sephora's sales associate entered Plaintiff Naidu's identifying and transaction information into Sephora's computer system.

128. Sephora transmitted Plaintiff Naidu's identifying and transaction information to TRE. This new identifying and transaction information is in addition to the other Consumer ID Data and Commercial Activity Data already transmitted to TRE, or otherwise collected by TRE, as alleged above.

129. Sephora's sales associate did not notify Plaintiff Naidu that her identifying and transaction information was being transmitted to TRE.

130. Plaintiff Naidu did not know her identifying and transaction information was being transmitted to TRE.

131. Sephora's sales associate did not notify Plaintiff Naidu that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

- 21 -

THIRD AMENDED CLASS ACTION COMPLAINT

132.  Plaintiff Naidu did not know that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

133.  After Sephora entered Plaintiff Naidu's identifying and transaction information into its computer system, and transmitted that information to TRE, TRE communicated to Sephora's sales associate that the attempted return or exchange was to be declined.

134.  After entering Plaintiff Naidu's identifying and transaction information into Sephora's computer system and receiving the communication from TRE, Sephora's sales associate communicated to Plaintiff Naidu that the return or exchange was declined based upon the recommendation of TRE.

135.  Sephora's sales associate presented Plaintiff Naidu a printout stating the return or exchange was declined and providing contact information for TRE.

136.  Plaintiff Naidu was thereby prevented from completing the return or exchange.

**Plaintiff Solorzano**

137.  Plaintiff Alexandra Solorzano is an individual residing in Los Angeles, California.

138.  On or about December 11, 2020, Plaintiff Solorzano attempted to return or exchange merchandise previously purchased from a Bath & Body Works retail location. Plaintiff Solorzano expected to receive, at a minimum, store credit in exchange for the return.

139.  Plaintiff Solorzano provided her driver's license at the Bath & Body Works sales associate's request. The Bath & Body Works sales associate entered Plaintiff Solorzano's identifying and transaction information into the Bath & Body Works computer system.

- 22 -

THIRD AMENDED CLASS ACTION COMPLAINT

140. The Bath & Body Works sales associate entered Plaintiff Solorzano's identifying and transaction information into the Bath & Body Works computer system.

141. Bath & Body Works transmitted Plaintiff Solorzano's identifying and transaction information to TRE. This new identifying and transaction information is in addition to the other Consumer ID Data and Commercial Activity Data already transmitted to TRE, or otherwise collected by TRE, as alleged above.

142. The Bath & Body Works sales associate did not notify Plaintiff Solorzano that her identifying and transaction information was being transmitted to TRE.

143. Plaintiff Solorzano did not know her identifying and transaction information was being transmitted to TRE.

144. The Bath & Body Works sales associate did not notify Plaintiff Solorzano that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

145. Plaintiff Solorzano did not know that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

146. After Bath & Body Works entered Plaintiff Solorzano's identifying and transaction information into its computer system, and transmitted that information to TRE, TRE communicated to the Bath & Body Works sales associate that the attempted return or exchange was to be declined.

147. After entering Plaintiff Solorzano's identifying and transaction information into the Bath & Body Works computer system and receiving the communication from TRE, the Bath & Body Works sales associate communicated to Plaintiff Solorzano that the return or exchange was declined based upon the recommendation of TRE.

THIRD AMENDED CLASS ACTION COMPLAINT

148. The Bath & Body Works sales associate presented Plaintiff Solorzano a printout stating the return or exchange was declined and providing contact information for TRE.

149. Plaintiff Solorzano was thereby prevented from completing the return or exchange.

**Plaintiff White**

150. Plaintiff Traci Duncan White is an individual residing in Rio Vista, California.

151. On or about October 3, 2019, Plaintiff White attempted to return or exchange merchandise previously purchased from Bed Bath & Beyond. Plaintiff White expected to receive, at a minimum, store credit in exchange for the return.

152. Plaintiff White provided her receipt, credit card, and driver's license at the Bed Bath & Beyond sales associate's request. Bed Bath & Beyond's sales associate entered Plaintiff White's identifying and transaction information into Bed Bath & Beyond's computer system.

153. Bed Bath & Beyond's sales associate entered Plaintiff White's identifying and transaction information into Bed Bath & Beyond's computer system.

154. Bed Bath & Beyond transmitted Plaintiff White's identifying and transaction information to TRE. This new identifying and transaction information is in addition to the other Consumer ID Data and Commercial Activity Data already transmitted to TRE, or otherwise collected by TRE, as alleged above.

155. Bed Bath & Beyond's sales associate did not notify Plaintiff White that her identifying and transaction information was being transmitted to TRE.

156. Plaintiff White did not know her identifying and transaction information was being transmitted to TRE.

157. Bed Bath & Beyond's sales associate did not notify Plaintiff White that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

- 24 -

THIRD AMENDED CLASS ACTION COMPLAINT

158. Plaintiff White did not know that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

159. After Bed Bath & Beyond entered Plaintiff White's identifying and transaction information into its computer system, and transmitted that information to TRE, TRE communicated to Bed Bath & Beyond's sales associate that the attempted return or exchange was to be declined.

160. After entering Plaintiff White's identifying and transaction information into Bed Bath & Beyond's computer system and receiving the communication from TRE, Bed Bath & Beyond's sales associate communicated to Plaintiff White that the return or exchange was declined based upon the recommendation of TRE.

161. Bed Bath & Beyond's sales associate presented Plaintiff White a printout stating the return or exchange was declined and providing contact information for TRE.

162. Plaintiff White was thereby prevented from completing the return or exchange.

### Plaintiff Al Kuraishi

163. Plaintiff Mayce Al Kuraishi is an individual residing in Oxnard, California.

164. On or about July 16, 2021, Plaintiff Al Kuraishi attempted to return or exchange merchandise previously purchased from CVS.

165. Plaintiff Al Kuraishi provided her driver's license and credit card at the CVS sales associate's request. CVS's sales associate entered Plaintiff Al Kuraishi's identifying and transaction information into CVS's computer system.

166. CVS's sales associate entered Plaintiff Al Kuraishi's identifying and transaction information into CVS's computer system.

167. CVS transmitted Plaintiff Al Kuraishi's identifying and transaction information to TRE. This new identifying and transaction information is in addition to the

- 25 -

THIRD AMENDED CLASS ACTION COMPLAINT

other Consumer ID Data and Commercial Activity Data already transmitted to TRE, or otherwise collected by TRE, as alleged above.

168.   CVS's sales associate did not notify Plaintiff Al Kuraishi that her identifying and transaction information was being transmitted to TRE.

169.   Plaintiff Al Kuraishi did not know her identifying and transaction information was being transmitted to TRE.

170.   CVS's sales associate did not notify Plaintiff Al Kuraishi that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

171.   Plaintiff Al Kuraishi did not know that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

172.   After CVS entered Plaintiff Al Kuraishi's identifying and transaction information into its computer system, and transmitted that information to TRE, TRE communicated to CVS's sales associate that the attempted return or exchange was to be declined.

173.   After entering Plaintiff Al Kuraishi's identifying and transaction information into CVS's computer system and receiving the communication from TRE, CVS's sales associate communicated to Plaintiff Al Kuraishi that the return or exchange was declined based upon the recommendation of TRE.

174.   CVS's sales associate presented Plaintiff Al Kuraishi a printout stating the return or exchange was declined and providing contact information for TRE.

175.   Plaintiff Al Kuraishi was thereby prevented from completing the return or exchange.

- 26 -
THIRD AMENDED CLASS ACTION COMPLAINT

**Plaintiff Chapa**

176. Plaintiff Stephanie Chapa is an individual residing in Meadow Vista, California.

177. On or about April 1, 2021, Plaintiff Chapa attempted to return or exchange merchandise previously purchased from Marshalls. Plaintiff Chapa expected to receive, at a minimum, store credit in exchange for the return.

178. Marshalls's sales associate entered Plaintiff Chapa's identifying and transaction information into Marshalls's computer system.

179. Marshalls transmitted Plaintiff Chapa's identifying and transaction information to TRE. This new identifying and transaction information is in addition to the other Consumer ID Data and Commercial Activity Data already transmitted to TRE, or otherwise collected by TRE, as alleged above.

180. Marshalls's sales associate did not notify Plaintiff Chapa that her identifying and transaction information was being transmitted to TRE.

181. Plaintiff Chapa did not know her identifying and transaction information was being transmitted to TRE.

182. Marshalls's sales associate did not notify Plaintiff Chapa that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

183. Plaintiff Chapa did not know that her identifying and transaction information transmitted to TRE was being used by TRE to generate a "risk score" for her from which TRE would then make a fraud determination and generate an approval or denial of the attempted return or exchange.

184. After Marshalls entered Plaintiff Chapa's identifying and transaction information into its computer system, and transmitted that information to TRE, TRE communicated to Marshalls's sales associate that the attempted return or exchange was to be declined.

- 27 -

THIRD AMENDED CLASS ACTION COMPLAINT

185. After entering Plaintiff Chapa's identifying and transaction information into Marshalls's computer system and receiving the communication from TRE, Marshalls's sales associate communicated to Plaintiff Chapa that the return or exchange was declined based upon the recommendation of TRE.

186. Marshalls's sales associate presented Plaintiff Chapa a printout stating the return or exchange was declined and providing contact information for TRE.

187. Plaintiff Chapa was thereby prevented from completing the return or exchange.

## CLASS ALLEGATIONS

188. Plaintiffs bring this class action lawsuit individually and on behalf of the proposed Class members under Rule 23 of the Federal Rules of Civil Procedure.

189. Plaintiffs seek certification of the following Class:

**National Class**: All persons in the United States who had their data transmitted by a Retail Defendant to The Retail Equation.

190. Specifically excluded from the Class are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

191. **Numerosity:** Plaintiffs do not know the exact number of Class members, but believe the Class comprises hundreds of thousands of consumers throughout the United States. As such, Class members are so numerous that joinder of all members is impracticable.

192. **Commonality:** Common questions of law and fact exist and predominate over any questions affecting only individual Class members. The common questions include:

a. Whether Defendants engaged in the conduct alleged herein;

b. Whether Retail Defendants' conduct constituted deceptive trade practices actionable under the applicable consumer protection laws;

THIRD AMENDED CLASS ACTION COMPLAINT

c.     Whether Defendants' policies and procedures invaded the privacy of Plaintiffs and Class members;

d.     Whether Defendants' policies and procedures purposefully target consumers of specific socioeconomic backgrounds;

e.     Whether Defendants' policies and procedures negligently affect consumers of specific socioeconomic backgrounds;

f.     Whether Plaintiffs and Class members are entitled to recover actual damages and/or statutory damages; and

g.     Whether Plaintiffs and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

193.   **Typicality:** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and Class members were injured through Defendants' uniform misconduct and their legal claims arise from the same core practices of Defendants.

194.   **Adequacy:** Plaintiffs will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests, and Plaintiffs have retained counsel that has considerable experience and success in prosecuting complex class action and consumer-protection cases.

195.   **Risks:** The proposed action meets the requirements of Fed. R. Civ. P. 23(b)(1) because prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Defendants. Retail Defendants collect and share, and TRE maintains and uses Consumer Commercial Activity Data and Consumer ID Data of the Class members and other individuals, and varying adjudications could establish incompatible standards with respect to: whether Defendants' ongoing conduct violates Class members' rights as alleged herein; and whether the injuries suffered by Class members are legally cognizable, among others. Prosecution of separate actions by individual Class members would also create a risk of individual adjudications that would be dispositive of the interests of other Class members

- 29 -

not parties to the individual adjudications, or substantially impair or impede the ability of Class members to protect their interests.

196.  **Injunctive Relief:** The proposed action meets the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants have acted or have refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

197.  **Predominance:** The proposed action meets the requirements of Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions that may affect only individual Class members in the proposed Class.

198.  **Superiority:** The proposed action also meets the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. The injury sustained by each Class member, while meaningful on an individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions against Defendants. Even if it were economically feasible, requiring hundreds of thousands of injured plaintiffs to file individual suits would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiffs anticipate no unusual difficulties in managing this class action.

199.  **Certification of Particular Issues:** In the alternative, the Class may be maintained as class actions with respect to particular issues, in accordance with Fed. R. Civ. P. 23(c)(4).

200.  Finally, all members of the purposed Class are identifiable. Defendants have access to addresses and other contact information for members of the Class, which can be used to identify Class members.

- 30 -

THIRD AMENDED CLASS ACTION COMPLAINT

## COUNT I
### Invasion of Privacy
### (Against all Defendants on behalf of the Class)

201. Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

202. Plaintiffs and Class members reasonably expected that their Consumer Commercial Activity Data and Consumer ID Data would be kept private and secure, including the information on their driver's license, passport, or other government issued identification when Plaintiffs provided them.

203. Plaintiffs and Class members reasonably expected that their Consumer Commercial Activity Data and Consumer ID Data would not be collected, used, sold, and/or disclosed by Defendants without appropriate notice and/or disclosures.

204. Defendants unlawfully invaded Plaintiffs' and Class members' privacy rights by:

   a.   collecting, selling, using and/or disclosing Plaintiffs' and Class members' Consumer Commercial Activity Data and Consumer ID Data in a manner highly offensive to a reasonable person;

   b.   collecting, selling, using and/or disclosing Plaintiffs' and Class members' Consumer Commercial Activity Data and Consumer ID Data without appropriate notice and/or disclosures; and

   c.   collecting, selling, using and/or disclosing Plaintiffs' and Class members' Consumer Commercial Activity Data and Consumer ID Data without their informed, voluntary, affirmative, and clear consent.

205. In collecting, selling, using and/or disclosing Plaintiffs' and Class members' Consumer Commercial Activity Data and Consumer ID Data, Defendants acted in reckless disregard of Plaintiffs' and Class members' privacy rights. Defendants knew or should have known that collecting, selling, using and/or disclosing Consumer Commercial Activity Data and Consumer ID Data, is highly offensive to a reasonable person in Plaintiffs' and Class members' position.

- 31 -

THIRD AMENDED CLASS ACTION COMPLAINT

206.   Defendants violated Plaintiffs' and Class members' right to privacy under the common law.

207.   Defendants violated Plaintiffs' and Class members' right to privacy under the California Constitution, Article I, Section 1.

208.   As a direct and proximate result of Defendants' unlawful invasions of privacy, Plaintiffs' and Class members' reasonable expectations of privacy were frustrated and defeated. Defendants' unlawful invasions of privacy damaged Plaintiffs and Class members as set forth above, and they are entitled to appropriate relief.

## COUNT II
### Violations of California's Unfair Competition Law
### California Business & Professions Code § 17200, *et seq.*
### (Against all Defendants on behalf of the Class)

209.   Plaintiffs reallege and incorporate by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

210.   Section 17200 of the California Business & Professions Code ("UCL") prohibits any "unlawful," "unfair," or "fraudulent" business practices.

211.   Retail Defendants violated, and continue to violate, the "unlawful" and "unfair" prongs of the UCL by transmitting to and sharing with TRE the Consumer Commercial Activity Data and Consumer ID Data they collected, and continue to collect, from Plaintiffs and Class members without the consent or knowledge of Plaintiffs and Class members in violation of Plaintiffs' and Class members' right to privacy under the common law and the California Constitution, Article I, Section 1.

212.   Retail Defendants' practice of transmitting to and sharing with TRE the Consumer Commercial Activity Data and Consumer ID Data they collected, and continue to collect, from Plaintiffs and Class members is and was immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. Retail Defendants' practice is and was also contrary to legislatively declared and public policy and the harm it caused, and continues to cause, to consumers outweighs its utility, if any.

THIRD AMENDED CLASS ACTION COMPLAINT

213.   TRE violated, and continues to violate, the "unlawful" and "unfair" prongs of the UCL by receiving from Retail Defendants the Consumer Commercial Activity Data and Consumer ID Data Retail Defendants collected, and continue to collect, from Plaintiffs and Class members without the consent or knowledge of Plaintiffs and Class members in violation of Plaintiffs' and Class members' right to privacy under the common law and the California Constitution, Article I, Section 1.

214.   TRE's practice of receiving from Retail Defendants the Consumer Commercial Activity Data and Consumer ID Data Retail Defendants collected, and continue to collect, from Plaintiffs and Class members is and was immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. TRE's practice is and was also contrary to legislatively declared and public policy and the harm it caused, and continues to cause, to consumers outweighs its utility, if any.

215.   Retail Defendants and TRE violated, and continue to violate, the "unlawful" and "unfair" prongs of the UCL by using the Consumer Commercial Activity Data and Consumer ID Data Retail Defendants collected, and continue to collect, from Plaintiffs and Class members without the consent or knowledge of Plaintiffs and Class members in violation of Plaintiffs' and Class members' right to privacy under the common law and the California Constitution, Article I, Section 1.

216.   Retail Defendants' and TRE's practice of using the Consumer Commercial Activity Data and Consumer ID Data Retail Defendants collected, and continue to collect, from Plaintiffs and Class members is and was immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class members. Retail Defendants' and TRE's practice is and was also contrary to legislatively declared and public policy and the harm it caused, and continues to cause, to consumers outweighs its utility, if any.

- 33 -
THIRD AMENDED CLASS ACTION COMPLAINT

217. As a direct and proximate result of Retail Defendants' and TRE's unlawful and unfair conduct, Plaintiffs and Class members have had, and continue to have, their privacy rights violated and have lost, and will continue to lose, money and property.

218. Retail Defendants' and TRE's conduct caused, and continues to cause, substantial injury to Plaintiffs and Class members.

219. Plaintiffs and Class members would not have purchased, or would not have paid as much for, merchandise from Retail Defendants had they known their Consumer Commercial Activity Data and Consumer ID Data was being shared, received, and used by Defendants in the manner described herein.

220. Moreover, TRE continues to aggregate Plaintiffs' and Class members' sensitive and personal information, and to use that information to disseminate reports and risk scores for Retail Defendants and for other retail entities as well. Plaintiffs and Class members' face the risk of having their returns rejected in the future based on these practices, and risk having additional Consumer Commercial Activity Data and Consumer ID Data collected in the future by other retail entities who also fail to disclose the use of TRE's services prior to collecting and transmitting that data to TRE.

221. Future harm from Retail Defendants' and other retailers' transmission of Commercial Activity Data and Consumer ID Data to TRE, and TRE's use of that data to deny future product returns and for other purposes, is a continuing harm that would not be remedied by money damages.

222. Accordingly, Plaintiffs seek prospective injunctive relief, including an order enjoining Retail Defendants and TRE from committing such unlawful and unfair business practices in the future. Unless such Class-wide injunctive relief is issued, Plaintiffs and Class members remain at risk, and there is no other adequate remedy at law.

223. Plaintiffs further seek the full amount of money that Plaintiffs and Class members paid for the purchased goods and/or restitutionary disgorgement of profits. Plaintiffs also seek attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

THIRD AMENDED CLASS ACTION COMPLAINT

## **PRAYER FOR RELIEF**

Plaintiffs, individually and on behalf of the Class, respectfully request that the Court order relief and enter judgment in their favor and against Defendants as follows:

A.      An order certifying Plaintiffs' proposed Class and appointing Plaintiffs and Plaintiffs' counsel to represent the Class;

B.      An order that Defendants are permanently enjoined from their improper conduct and practices as alleged;

C.      An order that Defendants shall delete all data collected from their improper conduct and practices as alleged;

D.      An order that Defendants shall engage in corrective advertising and/or disclosures regarding their improper conduct and practices as alleged;

E.      A judgment awarding Plaintiffs and Class members appropriate monetary relief, including actual and statutory damages, restitution, and disgorgement;

F.      An order that Defendants pay the costs involved in notifying the Class members about the judgment and administering the claims process;

G.      Pre-judgment and post-judgment interest;

H.      Attorneys' fees, expenses, and the costs of this action; and

I.      All other and further relief as this Court deems necessary, just, and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.


DATED: August 5, 2022                    Respectfully submitted,

                                                           */s/ Tina Wolfson*
                                                           Tina Wolfson (SBN 174806)
                                                           *twolfson@ahdootwolfson.com*
                                                           Theodore Maya (SBN 223242)
                                                           *tmaya@ahdootwolfson.com*
                                                           Bradley K. King (SBN 274399)
                                                           *bking@ahdootwolfson.com*
                                                           Christopher Stiner (SBN 276033)
                                                           *cstiner@ahdootwolfson.com*

THIRD AMENDED CLASS ACTION COMPLAINT

**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
310.474.9111 (*telephone*)
310.474.8585 (*facsimile*)

Henry J. Kelston (*pro hac vice*)
*hkelston@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
101 Avenue of the Americas, 9th Floor
New York, NY 10013
917.336.0171 (*telephone*)
913.336.0177 (*facsimile*)

Cornelius P. Dukelow (*pro hac vice*)
Oklahoma Bar No. 19086
**ABINGTON COLE + ELLERY**
320 South Boston Avenue
Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (*telephone & facsimile*)
*cdukelow@abingtonlaw.com*
www.abingtonlaw.com

*Counsel to Plaintiffs and the Proposed Class*

THIRD AMENDED CLASS ACTION COMPLAINT